UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

EOX TECHNOLOGY SOLUTIONS, INC.,
a Florida corporation,

     Plaintiff,

v.

LYDIE BRIGITTE GALASSO,

     Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

EOX TECHNOLOGY SOLUTIONS, INC. ("**Plaintiff**" or the "**Judgment Creditor**"), by  undersigned counsel, hereby files its Complaint and Demand for Jury Trial against LYDIE BRIGITTE GALASSO ("**Defendant**"), and alleges as follows:

**I.**    **NATURE OF ACTION**

"O, what a tangled web we weave, [w]hen first we practise to deceive!"  Sir Walter Scott, Marmion: A Tale of Flodden Field in Six Cantos 177 (Thomas Bayne ed., Forgotten Books 2008) (1808).

1.    Since 2017, Plaintiff was the holder of a "claim" against Flopro LLC ("**Flopro**" or the "**Judgment Debtor**") within the meaning of section 726.102(4) of the Florida Statutes by virtue of counterclaims asserted in Broward County Circuit Court Case No. CACE-17-06535 (04) (the "**State Court Action**").

2.    After a jury returned a verdict in favor of Plaintiff and against Flopro on August 23, 2021 in the State Court Action, Flopro's owner (the Defendant) and counsel (Beighley Myrick Udell & Lynne, P.A. or "**BMUL**") implemented a scheme to strip Flopro of its assets and to cast aside its liability ridden shell in order to hinder, delay, and defraud Plaintiff's

collection efforts (the "**Bust Out Scheme**").

3.      First, they agreed that BMUL would not file Flopro's 2022 Annual Report with the Florida Division of Corporations (despite BMUL having done so every year since 2009) so the entity would be administratively dissolved after its assets were fraudulently transferred to the Defendant and other third parties.

4.      Second, they agreed to fraudulently transfer Flopro's non-exempt funds to the Defendant and other third parties in order to place them beyond the reach of Plaintiff's collection efforts.

5.      Third, they agreed to transfer Flopro's non-exempt commercial real property to a third party and to fraudulently transfer the sales proceeds to the Defendant in order to place them beyond the reach of Plaintiff's collection efforts.

6.      Fourth, Flopro was administratively dissolved by the Florida Division of Corporations in September 2022 after its funds and real property were transferred to the Defendant and other third parties consistent with their plan and scheme.

7.      Lastly, they agreed BMUL would continue as Flopro's counsel in the State Court Action in order to hinder and delay Plaintiff's collection efforts but, would resign as Flopro's registered agent in October 2022 in order to make it more difficult for Plaintiff to serve Flopro with process.

8.      In sum, the Defendant and BMUL planned, structured, negotiated, documented, implemented, and consummated the Bust Out Scheme in order to hinder, delay, and defraud Plaintiff's collection efforts in the period August 2021 through October 2022.  Remarkably, BMUL charged and collected attorneys' fees from Flopro for its role in divesting its assets and dissolving its legal existence despite known creditor claims.

2

9.     Flopro (by and through BMUL) then handed out a Halloween trick in the form of a filing in the State Court Action on October 31, 2022, wherein they boasted about their successful effectuation of the Bust Out Scheme as follows: "Flopro is a dissolved limited liability company with no assets.  Flopro has no ability to satisfy any further judgments…."

10.    This is an action against the Defendant to recover avoidable transfers and damages for civil conspiracy, conversion, civil theft, improper or prohibited distributions, and injunctive relief.

## II.     PARTIES

11.    Plaintiff is a Florida corporation with a principal place of business located in Broward County, Florida.

12.    Defendant is a citizen of France who, upon information and belief, resides in the Republic of Mauritius.  At all relevant times, Defendant was the sole member, managing-member, and insider of Flopro LLC within the meaning of section 726.102(8) of the Florida Statutes.  Defendant is subject to the personal jurisdiction of this Court pursuant to, *inter alia*, section 48.193 of the Florida Statutes because she has engaged, and regularly engages, in substantial and not isolated activity within the State of Florida.  At all relevant times to the claims asserted in this action, the Defendant has (among other things):

(a)     owned, operated, conducted, engaged in, and carried on a business or business venture in Broward County, Florida for pecuniary benefit;

(b)     committed tortious acts within this state, including those asserted herein;

(c)     directed fraud or other intentional misconduct at Plaintiff, a Florida corporation;

(d)     structured, negotiated, documented, implemented, and consummated the Bust Out Scheme which rendered her Florida limited liability company, Flopro, an assetless and dissolved entity in order to hinder, delay, and defraud Plaintiff and Flopro's other creditors in the period August 2021

3

through October 2022;

(e)     represented that her address is 1255 West Atlantic Boulevard, #314, Pompano Beach, Florida 33069[1] in numerous corporate filings and bank records submitted to Florida state agencies and Florida financial institutions;

(f)     negotiated and executed lease agreements on behalf of Flopro with third party tenants of the Real Property (as defined below) in Broward County, Florida from 2013 through 2022;

(g)     purchased and sold several parcels of real estate individually and through Florida organized entities in Florida from 2013 through 2022;

(h)     executed contracts, as well as other closing documents, pertaining to the sale of the Real Property (as defined below) to a third party in Broward County, Florida during the period October 2021 through April 2022 in order to hinder, delay, and defraud Plaintiff's collection efforts;

(i)     deposited the proceeds from the sale of the Real Property (as defined below) into an account opened and maintained in her individual name at a local bank branch in Broward County, Florida in or about April 2022 in order to hinder, delay, and defraud Plaintiff's collection efforts;

(j)     withdrew the proceeds from the sale of the Real Property (as defined below) from an account opened and maintained in her individual name at a local bank branch in Broward County, Florida in or about April 2022 to, upon information and belief, another account opened and maintained in her individual name in a foreign jurisdiction in order to hinder, delay, and defraud Plaintiff's collection efforts;

(k)     utilized law firm bank accounts in Broward County, Florida to receive deposits of revenue and other funds belonging to Flopro and to obtain disbursements of such revenue and other funds to herself in order to hinder, delay, and defraud Flopro's creditors in Florida;

(l)     engaged in substantial financial transactions through accounts opened and maintained in her individual name and the names of Florida entities she owned or controlled with local bank branches in Broward County, Florida; and

(m)     directed Flopro's actions in prosecuting and defending suits in state trial courts and appellate courts in Florida for a period of several years and continuing to the present day.

---

[1]  This is also the address of BMUL's Pompano Beach office.

143544142.1

Additionally, the tort claims asserted herein accrued in the State of Florida.  The interest of the judicial system in Florida resolving this dispute is significant.  Accordingly, the exercise of personal jurisdiction over the Defendant does not offend traditional notions of fair play and substantial justice and otherwise comports with the due process clause of the United States Constitution.

### III.   JURISDICTION AND VENUE

13.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

14.     Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District and a substantial part of the property that is the subject of this action is situated in this District.

### IV.   GENERAL ALLEGATIONS

15.     Flopro acquired commercial property located at: (i) 1239 East Newport Center Drive, Units 105 and 106, Deerfield Beach, Florida on or about December 30, 2011; (ii) 1239 East Newport Center Drive, Units 101 through 104, Deerfield Beach, Florida on or about June 12, 2012; and (iii) 1287 East Newport Center Drive, Unit 206, Deerfield Beach, Florida on or about June 11, 2012 (together, the "**Real Property**").

16.     At all relevant times, the Real Property was non-exempt and unencumbered.

17.     From April 2017 through December 2022, Plaintiff and Flopro were parties to the State Court Action.  Flopro filed the Complaint initiating the action on April 6, 2017 and Plaintiff filed counterclaims against Flopro on September 26, 2017.

143544142.1

18.     By virtue of its counterclaims, Plaintiff was the holder of a "claim" against Flopro within the meaning of section 726.102(4) of the Florida Statutes.  Such statute defines the term "claim" as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."

19.     Flopro owned the Real Property throughout the State Court Action, until in or about April 2022.

20.     During the State Court Action, Flopro leased each of the units in the Real Property to third parties and the rental income was deposited into BMUL's bank account(s) and was transferred to the Defendant in her individual capacity (the "**Rental Income Transfers**").

21.     On August 23, 2021, a jury returned a verdict in favor of Plaintiff on its counterclaims against Flopro in the State Court Action and awarded damages in the amount of $149,938.33 (the "**Damages**").[2]  As a result, Plaintiff was the prevailing party in the State Court Action and was entitled to collect the Damages as well as any subsequently awarded prevailing party attorneys' fees and costs from Flopro.

22.     On January 4, 2022, the State Court entered a Final Judgment in favor of Plaintiff and against Flopro, authorized execution to issue forthwith, and reserved jurisdiction to determine Plaintiff's entitlement to and amount of attorneys' fees and costs.  Thereupon, Plaintiff caused the Final Judgment to be recorded in the official records of Broward County, Florida on January 5, 2022 as Instrument Nos. 117844939 and 117845137, on January 20, 2022 as Instrument No. 117880304, and in the Florida Judgment Lien Database on January 5, 2022.[3]

---

[2] *See* Exhibit A hereto (Jury Verdict).
[3] *See* Exhibit B hereto (Final Judgment and Electronic Judgment Lien Certificate).

143544142.1

23.     On January 31, 2022, Plaintiff filed a *Motion To Establish Entitlement To, And For Award Of, Attorneys' Fees And Costs* seeking an award of fees through December 31, 2021 in the amount of $310,043.50 and costs in the amount of $21,098.51.

24.     On March 2, 2022, Plaintiff filed an *Ex Parte Amended Motion For Issuance Of Writ Of Execution By The Clerk Of The Court* and identified the Real Property therein as "non-exempt property which is subject to execution in Broward County, Florida".  On March 3, 2022, the Clerk issued the Writ of Execution.[4]

25.     Apparently alarmed by the Writ of Execution, Defendant executed a *Special Warranty Deed* in Broward County, Florida on behalf of Flopro (as grantor) purporting to convey the Real Property to 4 Boys Properties LLC (as grantee) on March 24, 2022 (the "**Real Property Transfer**").[5]

26.     On March 29, 2022, the Broward County Clerk issued a Certificate stating that the Final Judgment lien had been transferred to a cash bond.[6]

27.     Upon information and belief, the closing of the Real Property Transfer occurred on April 22, 2022 (the "**Closing**").

28.     Although Flopro was the sole owner of the Real Property and the party solely entitled to payment of the sales proceeds in the approximate amount of $2 million, the proceeds were disbursed to the Defendant[7] consistent with the Bust Out Scheme (the "**Sales Proceeds Transfer**").

---

[4] *See* Exhibit C hereto (Motion for Writ of Execution and Writ of Execution).

[5] *See* Exhibit D hereto (Special Warranty Deed).

[6] *See* Exhibit E hereto (Clerk's Certificate Re: Transfer of judgment lien to Cash Bond Under section 55.10, Fla. Stat.

[7] *See* Exhibit F hereto (Seller Disbursement Instructions and Wire Transfer Confirmation).  The Wire Transfer Confirmation reflects Defendant's use of an address at 1255 West Atlantic Boulevard, Suite 314, Pompano Beach, Florida 33069.  This is also the address of BMUL's Pompano Beach office.

29.     Upon learning of the Real Property Transfer through a search of the official records, undersigned sent a letter to BMUL on August 18, 2022 requesting confirmation and verification that sufficient sales proceeds were being held by or on behalf of Flopro to satisfy Plaintiff's claims.  Unfortunately, BMUL failed to respond to this request.

30.     On November 30, 2022, the Court entered a Supplemental Final Judgment in favor of Plaintiff and against Flopro in the amount of $398,802.93 and authorized execution to issue forthwith.  Thereupon, Plaintiff caused the Supplemental Final Judgment to be recorded in the official records of Broward County, Florida on December 1 and 9, 2022 as Instrument Nos. 118546694 and 118562842 respectively, and in the Florida Judgment Lien Database on December 12, 2022.[8]

31.     On January 10, 2023, the Clerk of the Court issued a Writ of Execution for collection of the Supplemental Final Judgment.[9]

32.     As a result of the Bust Out Scheme, the Supplemental Final Judgment entered on November 30, 2022 remains unsatisfied in its full amount, has not been stayed, and remains valid and outstanding.

33.     Plaintiff has retained the undersigned law firm as counsel of record herein and has agreed to compensate and reimburse them for services rendered and costs incurred in connection with the enforcement of its rights and remedies as more fully set forth below.

34.     All conditions precedent to the institution of this action have been performed, have occurred, have been waived or have otherwise been excused.

---

[8] *See* Exhibit G hereto (Supplemental Final Judgment and Electronic Judgment Lien Certificate).
[9] *See* Exhibit H hereto (Writ of Execution).

143544142.1

V.    **CLAIMS**

**COUNT I**
**Avoidance and Recovery of Actual Fraudulent Transfers Pursuant to Florida Statute §§**
**726.105(1)(a) and 726.108 – Rental Income Transfers & Sales Proceeds Transfer**

35.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 34 of this Complaint as if set forth at length herein.

36.    This is an action to avoid and recover the Rental Income Transfers and Sales Proceeds Transfer to the Defendant as actual fraudulent transfers pursuant to Florida Statute §§ 726.105(1)(a) and 726.108.

37.    The Rental Income Transfers and Sales Proceeds Transfer constituted transfers of interests of the Judgment Debtor in property.

38.    The Judgment Debtor made the Rental Income Transfers and Sales Proceeds Transfer to the Defendant with the actual intent to hinder, delay, or defraud any creditor of the debtor.

39.    In determining actual intent, the Court may give consideration to several badges of fraud including:

a.    the Rental Income Transfers and Sales Proceeds Transfer were to the Defendant, an insider of the Judgment Debtor;

b.    the transfer of the Rental Income Transfers and Sales Proceeds Transfer to the Defendant in her individual capacity was concealed;

c.    before the Rental Income Transfers and Sales Proceeds Transfer to the Defendant, the Judgment Debtor had been sued or threatened with suit;

d.    the Real Property Transfer and Sales Proceeds Transfer were of substantially all the Judgment Debtor's assets;

e.    the Defendant and BMUL agreed that BMUL would not file the Judgment Debtor's 2022 Annual Report with the Florida Division of Corporations (despite BMUL having done so every year since 2009) and, consistent with their plan and scheme, the entity was administratively dissolved after

9

the Real Property was sold to a third party and the Rental Income Transfers and Sales Proceeds Transfer were made to the Defendant;

f.    the Defendant (as the Judgment Debtor's insider) absconded, and removed or concealed assets to a foreign jurisdiction;

g.    the Judgment Debtor did not receive any consideration, must less reasonably equivalent value, from the Defendant in exchange for the Rental Income Transfers and Sales Proceeds Transfer;

h.    The Judgment Debtor was insolvent or became insolvent shortly after the Rental Income Transfers and Sales Proceeds Transfer were made to the Defendant; and/or

i.    The Rental Income Transfers and Sales Proceeds Transfer occurred shortly before or shortly after a substantial debt was incurred.

40.    Plaintiff and other creditors of the Judgment Debtor have standing to assert the instant claim for relief under Chapter 726 of the Florida Statutes, the Florida Uniform Fraudulent Transfer Act ("**FUFTA**").

41.    By reason of the foregoing, the Rental Income Transfers and Sales Proceeds Transfer to the Defendant are avoidable pursuant to Florida Statutes § 726.105(1)(a).  As a result, Plaintiff may recover the amount or value of the Rental Income Transfers and Sales Proceeds Transfer from the Defendant.

**WHEREFORE**, Plaintiff respectfully requests this Court to enter a judgment against the Defendant:

(a)    determining all or part of the Rental Income Transfers and Sales Proceeds Transfer were fraudulent  and avoiding such transfers under Florida Statute § 726.105(1)(a);

(b)    ordering a monetary award in the amount of the avoided Rental Income Transfers and Sales Proceeds Transfer, together with accrued prejudgment interest and taxable costs;

(c)    awarding any additional relief this Court deems is just and proper.

143544142.1

**COUNT II**
**Avoidance and Recovery of Constructive Fraudulent Transfers Pursuant to Florida Statute**
**§§ 726.105(1)(b) and 726.108 - Rental Income Transfers & Sales Proceeds Transfer**

42.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 34 of this Complaint as if set forth at length herein.

43.     This is an action to avoid and recover the Rental Income Transfers and Sales Proceeds Transfer from the Defendant as constructive fraudulent transfers pursuant to Florida Statute §§ 726.105(1)(b) and 726.108.

44.     The Rental Income Transfers and Sales Proceeds Transfer constituted transfers of interests of the Judgment Debtor in property made to the Defendant:

        a.     Without receiving a reasonably equivalent value in exchange for such transfers; and

        c.     At a time when the Judgment Debtor was either

            (i)     engaged or about to engage in a business or transaction for which the remaining assets of the Judgment Debtor were unreasonably small in relation to the business or transaction; or

            (ii)     intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

45.     Plaintiff and other creditors of the Judgment Debtor have standing to assert the instant claim for relief under Chapter 726 of the Florida Statutes, the Florida Uniform Fraudulent Transfer Act ("**FUFTA**").

46.     By reason of the foregoing, the Rental Income Transfers and Sales Proceeds Transfer to the Defendant are avoidable pursuant to Florida Statute § 726.105(1)(b).  As a result, Plaintiff may recover the amount or value of the Rental Income Transfers and Sales Proceeds Transfer from the Defendant.

143544142.1

**WHEREFORE**, Plaintiff respectfully requests this Court to enter a judgment against the Defendant:

(a)     determining all or part of the Rental Income Transfers and Sales Proceeds Transfer were fraudulent and avoiding such transfers under Florida Statute § 726.105(1)(b);

(b)     ordering a monetary award in the amount of the avoided Rental Income Transfers and Sales Proceeds Transfer, together with accrued prejudgment interest and taxable costs;

(c)     awarding any additional relief this Court deems is just and proper.

## COUNT III
### Avoidance and Recovery of Constructive Fraudulent Transfers Pursuant to Florida Statute §§ 726.106(1) and 726.108 – Rental Income Transfers & Sales Proceeds Transfer

47.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 34 of this Complaint as if set forth at length herein.

48.     This is an action to avoid and recover the Rental Income Transfers and Sales Proceeds Transfer from the Defendant as constructive fraudulent transfers pursuant to Florida Statute §§ 726.106(1) and 726.108.

49.     The Rental Income Transfers and Sales Proceeds Transfer constituted transfers of interests of the Judgment Debtor in property made to the Defendant:

a.     Without receiving a reasonably equivalent value in exchange for such transfers; and

c.     At a time when the Judgment Debtor was insolvent or became insolvent as a result of such transfers.

50.     Plaintiff and other creditors of the Judgment Debtor have standing to assert the instant claim for relief under Chapter 726 of the Florida Statutes, the Florida Uniform Fraudulent Transfer Act ("**FUFTA**").

51.     By reason of the foregoing, the Rental Income Transfers and Sales Proceeds Transfer to the Defendant are avoidable pursuant to Florida Statute § 726.106(1).  As a result, Plaintiff may recover the amount or value of the Rental Income Transfers and Sales Proceeds Transfer from the Defendant.

**WHEREFORE**, Plaintiff respectfully requests this Court to enter a judgment against the Defendant:

(a)     determining all or part of the Rental Income Transfers and Sales Proceeds Transfer were fraudulent and avoiding such transfers under section 726.106(1) of the Florida Statutes;

(b)     ordering a monetary award in the amount of the avoided Rental Income Transfers and Sales Proceeds Transfer, together with accrued prejudgment interest and taxable costs;

(c)     awarding any additional relief this Court deems is just and proper.

## COUNT IV
### Preliminary and Permanent Injunction

52.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 34 of this Complaint as if set forth at length herein.

53.     This is an action seeking the issuance of preliminary and permanent injunctive relief against the Defendant (as well as any of her successors, attorneys, agents, assigns, nominees, designees, mediate or immediate transferees and/or beneficiaries) pursuant to Fla. Stat. §§ 726.108(b) and (c)(1) from further transferring, dissipating, hypothecating, removing, concealing, destroying and/or otherwise disposing of the Rental Income Transfers, Sales Proceeds Transfer, or the proceeds, products, and/or replacements thereof.

54.     Plaintiff has alleged that the Judgment Debtor made the Rental Income Transfers and Sales Proceeds Transfer (comprising substantially all, if not the entirety, of the Judgment

143544142.1

Debtor's assets) to the Defendant and has asserted claims to avoid and recover such transfers pursuant to Chapter 726 of the Florida Statutes, the Florida Uniform Fraudulent Transfer Act ("**FUFTA**").

55.     Based on their actions in the State Court Action and in relation to the Bust Out Scheme, Plaintiff has a good faith belief that the Defendant is likely to further transfer, dissipate, hypothecate, remove, conceal, destroy and/or otherwise dispose of the Rental Income Transfers, Sales Proceeds Transfer, or the proceeds, products, and/or replacements thereof.

56.     In order to protect and preserve the Rental Income Transfers, Sales Proceeds Transfer, and this Court's jurisdiction to award appropriate relief, the Court should issue preliminary and permanent injunctive relief, decrees and judgments enjoining and restraining the Defendant (as well as any of her successors, attorneys, agents, assigns, nominees, designees, mediate or immediate transferees and/or beneficiaries) from transferring, dissipating, hypothecating, removing, concealing, destroying and/or otherwise disposing of the Rental Income Transfers, Sales Proceeds Transfers, or the proceeds, products, and/or replacements thereof.

57.     If the Defendant or any of her successors, attorneys, agents, assigns, nominees, designees, mediate or immediate transferees and/or beneficiaries are permitted to transfer, dissipate, hypothecate, remove, conceal, destroy and/or otherwise dispose of the Rental Income Transfers, Sales Proceeds Transfer, or the proceeds, products, and/or replacements thereof, there would continue to be a significant risk of loss of such assets and would likely defeat the jurisdiction of this Court to award appropriate relief to the Plaintiff on the claims asserted in this action.

58.     Plaintiff would suffer irreparable harm if the Rental Income Transfers and Sales Proceeds Transfer are further transferred, concealed, dissipated, destroyed, hypothecated, removed, and/or otherwise disposed.

59.     Plaintiff has a clear legal right to an order enjoining the Defendant from transferring, concealing, dissipating, destroying, hypothecating, removing, and/or otherwise disposing the Rental Income Transfers, Sales Proceeds Transfer, or the proceeds, products, and/or replacements thereof.

60.     Maintaining the status quo is therefore necessary and protective of the interests of all parties.

61.     Plaintiff lacks an adequate remedy at law.

62.     The public interest would be served by an Order enjoining the Defendant (as well as any of her successors, attorneys, agents, assigns, nominees, designees, mediate or immediate transferees and/or beneficiaries) from transferring, concealing, dissipating, destroying, hypothecating, removing, and/or otherwise disposing of the Rental Income Transfers, Sales Proceeds Transfer, or the proceeds, products, and/or replacements thereof.

**WHEREFORE**, Plaintiff respectfully requests the Court to enter appropriate interim orders and final judgment against the Defendant (i) imposing a preliminary and a permanent injunction against the Defendant, as well as any of her successors, attorneys, agents, assigns, nominees, designees, mediate or immediate transferees and/or beneficiaries, (collectively, the "**Enjoined Parties**"), and all others in custody, possession or control of funds, documents, or other property pertaining to the Rental Income Transfers, Sales Proceeds Transfer, or the proceeds, products, and/or replacements thereof, from, among other things, (a) taking any action, directly or indirectly, to transfer, conceal, dissipate, destroy, encumber, hypothecate, abandon or

15

143544142.1

otherwise dispose of any and all income, revenue, funds, contracts, licenses, contract rights, real property, tangible and intangible personal property and any other legal or equitable asset or property right of, or received, directly or indirectly, from the Defendant, without Plaintiff's prior written consent; (b) restraining and enjoining the Enjoined Parties from authorizing, causing, effectuating or acquiescing in such acts which might have the effect of impairing the value of the Defendant's assets; (c) transferring or withdrawing balances on deposit in financial accounts containing funds originating from the Defendant or her property or the proceeds, products, and/or replacements thereof; and (d) for any other relief the Court may deem just and proper.

## COUNT V
## Civil Conspiracy

63.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 34 of this Complaint as if set forth at length herein.

64.     Since 2017, the Defendant and others were aware of Plaintiff's claims against Flopro in the State Court Action.

65.     At all relevant times, the Defendant and others had knowledge of (i) Flopro's ownership of the non-exempt and unencumbered Real Property for approximately ten years (from June 2012 through April 2022) and (ii) Flopro's filing of annual reports with the Florida Division of Corporations every year since 2009.

66.     After the jury returned a verdict in favor of Plaintiff and against Flopro in the State Court Action on August 23, 2021, the Defendant conspired with others to make Flopro an assetless and dissolved entity.

67.     In the period August 2021 through October 2022, the Defendant and others planned, structured, negotiated, documented, implemented, and consummated the Bust Out Scheme in order to hinder, delay, and defraud Plaintiff's collection efforts.

143544142.1

68.     On October 31, 2022, Flopro represented to the court in the State Court Action that "Flopro is a dissolved limited liability company with no assets.  Flopro has no ability to satisfy any further judgments…."

69.     The Defendant conspired with others to hinder, delay, and defraud Plaintiff and Flopro's other creditors in Florida by agreeing to perform activities in concert for or on their behalf which they knew they could not lawfully perform and with the specific intent and purpose of making Flopro an assetless and dissolved entity.

70.     Defendant and others knowingly, willfully and maliciously engaged in the Bust Out Scheme in concert for or on behalf of the Defendant.

71.      The combination of the Defendant and others was a peculiarly effective method of concealing the scheme to defraud Plaintiff and Flopro's other creditors in Florida because it enabled the Defendant to share her fraudulent objective with others and conceal it from Plaintiff and Flopro's other creditors in Florida based upon the presumed existence of privileges and confidentiality.

72.     The Defendant knew that her co-conspirators had the reputation and experience to properly structure and promptly consummate the Bust Out Scheme consistent with her objectives of hindering, delaying, and defrauding Plaintiff's collection efforts.

73.     Defendant and her co-conspirators lacked any justification or privilege for their actions.

74.     Plaintiff has suffered significant damages as a consequence of Defendant's actions.

**WHEREFORE**, Plaintiff demands judgment against the Defendant for damages and for such other and further relief as the Court may deem just and proper, including the imposition of punitive damages at the appropriate stage of these proceedings.

## COUNT VI
## Conversion

75.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 34 of this Complaint as if set forth at length herein.

76.     As Flopro's sole member, managing-member, and insider, Defendant knew that Flopro was prohibited from making the Rental Income Transfers and Sales Proceeds Transfer under the Florida Revised Limited Liability Company Act (e.g., Fla. Stat. § 605.0405(1)) because, after such distributions: (a) Flopro would not be able to pay its debts as they became due in the ordinary course of the company's activities and affairs and (b) Flopro's total assets would be less than the sum of its total liabilities, plus the amount that would be needed if the company were to be dissolved and wound up at the time of the distribution, to satisfy the preferential rights upon dissolution and winding up of members and transferees whose preferential rights are superior to those of persons receiving the distribution.

77.     Notwithstanding, Defendant caused Flopro to make the Rental Income Transfers and Sales Proceed Transfer to herself in her individual capacity in order to hinder, delay, and defraud Plaintiff's collection efforts.

78.     The funds which were the subject of the Rental Income Transfers and Sales Proceeds Transfer constituted specific and identifiable money because such funds were set aside in an attorney's trust account and settlement agent's escrow account for the sole and exclusive benefit of Flopro (the party that owned, leased, and sold the Real Property while there were known creditor claims).

79.     Defendant exercised wrongful dominion and control over Flopro's assets including, without limitation, the Rental Income Transfers and Sales Proceeds Transfer.

80.     Defendant has had the full and exclusive benefit of Flopro's assets including, without limitation, the Rental Income Transfers and Sales Proceeds Transfer since she took them.

81.     Plaintiff has suffered damages as a consequence of Defendant's wrongful actions.

82.     Plaintiff has demanded return of Flopro's assets including, without limitation, the Rental Income Transfers and Sales Proceeds Transfer but, Defendant has failed to comply with the demands.

83.     Further demands for return of Flopro's assets including, without limitation, the Rental Income Transfers and Sales Proceeds Transfer, would be futile.

**WHEREFORE**, Plaintiff respectfully requests the Court to enter judgment against the Defendant and award compensatory damages as a result of her conversion, together with interest and costs, and any further relief that this Court deems just and proper.  Plaintiff further reserves the right to seek leave to amend this Complaint to include a claim for punitive damages against the Defendant pursuant to Fla. Stat. § 768.72.

**COUNT VII**
**Civil Theft**

84.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 34 of this Complaint as if set forth at length herein.

85.     As Flopro's sole member, managing-member, and insider, Defendant knew that Flopro was prohibited from making the Rental Income Transfers and Sales Proceeds Transfer under the Florida Revised Limited Liability Company Act (e.g., Fla. Stat. § 605.0405(1)) because, after such distributions: (a) Flopro would not be able to pay its debts as they became

19

143544142.1

due in the ordinary course of the company's activities and affairs and (b) Flopro's total assets would be less than the sum of its total liabilities, plus the amount that would be needed if the company were to be dissolved and wound up at the time of the distribution, to satisfy the preferential rights upon dissolution and winding up of members and transferees whose preferential rights are superior to those of persons receiving the distribution.

86.     Notwithstanding, Defendant caused Flopro to make the improper and prohibited distributions consisting of the Rental Income Transfers and Sales Proceed Transfer to herself in her individual capacity in order to hinder, delay, and defraud Plaintiff's collection efforts.

87.     Defendant has acted with the felonious intent to permanently deprive Flopro of its assets, or with the felonious intent to permanently appropriate such assets for her own use, in order hinder, delay, and defraud Plaintiff's collection efforts against Flopro.

88.     Defendant has exercised wrongful dominion or control over Flopro's assets including, without limitation, the Rental Income Transfers and Sales Proceeds Transfer.

89.     Defendant has had the full and exclusive benefit of Flopro's assets including, without limitation, the Rental Income Transfers and Sales Proceeds Transfer, since she took them.

90.     Plaintiff has suffered damages as a consequence of Defendant's wrongful actions.

91.     Plaintiff has demanded return of Flopro's assets including, without limitation, the Rental Income Transfers and Sales Proceeds Transfer but, Defendant has failed to comply with the demands.

92.     Further demands for return of Flopro's assets including, without limitation, the Rental Income Transfers and Sales Proceeds Transfer, would be futile.

143544142.1

93.     Defendant is not entitled to retain Flopro's assets including, without limitation, the Rental Income Transfers and the Sales Proceeds Transfer.

**WHEREFORE**, Plaintiff respectfully requests the Court to enter judgment against Defendant and award compensatory damages as a result of Defendant's civil theft, together with interest, and costs, and any further relief this Court deems just and proper.

**COUNT VIII**
**<u>Liability for Improper & Prohibited Distributions under Fla. Stat. § 605.0406(3)</u>**

94.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 34 of this Complaint as if set forth at length herein.

95.     Flopro's Rental Income Transfers and Sales Proceeds Transfer to the Defendant constituted prohibited distributions and/or improper distributions under section 605.0405(1) of the Florida Statutes because, after such distributions: (a) Flopro was not able to pay its debts as they became due in the ordinary course of the company's activities and affairs and/or (b) Flopro's total assets were less than the sum of its total liabilities, plus the amount that would be needed if the company were to be dissolved and wound up at the time of the distribution, to satisfy the preferential rights upon dissolution and winding up of members and transferees whose preferential rights are superior to those of persons receiving the distribution.

96.     In her capacity as member and managing-member of Flopro, Defendant consented to the prohibited distributions and/or improper distributions to herself contrary to section 605.04091 of the Florida Statutes.

97.     Defendant received the prohibited distributions and/or improper distributions from Flopro with knowledge that the distributions violated section 605.0405 of the Florida Statutes.

143544142.1

98.     As a result, Defendant is personally liable for the amount of the prohibited distributions and/or improper distributions pursuant to sections 605.0406(1) and (3) of the Florida Statutes.

**WHEREFORE**, Plaintiff respectfully requests the Court to enter judgment against Defendant for the prohibited distributions, prejudgment interest, taxable costs, and any further relief this Court deems just and proper.

## V.     JURY TRIAL DEMAND

99.     Plaintiff hereby demands a jury trial on all issues so triable.

## VI.     RESERVATION OF RIGHTS

100.     Plaintiff reserves its right to amend this Complaint, upon completion of its investigation and discovery, to assert any additional claims for relief against the Defendant as may be warranted under the circumstances allowed by law.

Dated: March 10, 2023                    Respectfully submitted,

FOX ROTHSCHILD LLP
*Attorneys for the Plaintiff/Judgment Creditor*
One Biscayne Tower
2 South Biscayne Boulevard, Suite 2750
Miami, FL 33131
Telephone: (305) 442-6543
Telecopier: (305) 442-6541

By: /s/ Robert F. Elgidely
        Robert F. Elgidely, Esq.
        Florida Bar No. 111856
        E-Mail: relgidely@foxrothschild.com

22

143544142.1