# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 23-CV-60448-RUIZ/STRAUSS

**EOX TECHNOLOGY SOLUTIONS,**

     Plaintiff,

v.

**LYDIE BRIDGET GALASSO,**

     Defendant.

_____/

## REPORT AND RECOMMENDATION

THIS MATTER came before the Court upon Defendant Lydie Galasso's Amended Motion to Dismiss ("Motion to Dismiss") [DE 26], Defendant Lydie Galasso's Motion to Abstain and Stay Case Based on Colorado River Doctrine ("Motion to Abstain") [DE 27], and Plaintiff's Conditional Motion for Authorization to Conduct Jurisdictional Discovery and for Evidentiary Hearing ("Conditional Motion") [DE 34].  The motions have been referred to me to take all action as required by law [DE 28, 38].  I have reviewed the motions, the briefing thereon [DE 32, 33, 39, 40, 41, 42], and all other pertinent portions of the record.  For the reasons discussed herein, I respectfully **RECOMMEND** that the Motion to Dismiss [DE 26] be **GRANTED IN PART and DENIED IN PART**, that the Motion to Abstain [DE 27] be **DENIED**, and that the Conditional Motion [DE 34] be **DENIED AS MOOT**.

## BACKGROUND

Plaintiff is a judgment creditor of Flopro LLC ("Flopro"), a Florida limited liability company. *See* Complaint [DE 1] ¶¶ 1, 12(d), 22, 30, 32.  Defendant, a citizen of France who resides in the Republic of Mauritius, is the sole member and managing-member of Flopro.  *Id.* ¶ 12.

Until around April 2022, Flopro owned real property ("Real Property") in Broward County, Florida. *Id.* ¶ 19. It leased units of the Real Property to third parties, including Plaintiff. *Id.* ¶ 20; *see also* [DE 1-1, 1-2]. Between 2013 and 2022, Defendant negotiated and executed lease agreements on Flopro's behalf. Complaint ¶ 12(f). After a dispute between Plaintiff and Flopro arose, Flopro sued Plaintiff in state court, in April 2017. *Id.* ¶ 17. In September 2017, Plaintiff filed a counterclaim against Flopro. *Id.* In August 2021, a jury returned a verdict in favor of Plaintiff and against Flopro. *Id.* ¶¶ 2, 21. Consistent with the jury's verdict, the state court entered – in January 2022 – a Final Judgment in favor of Plaintiff in the amount of $152,277.97. *Id.* ¶ 22; [DE 1-2]. In November 2022, the state court entered a Supplemental Final Judgment in favor of Plaintiff – for attorneys' fees and costs – in the amount of $398,802.93. Complaint ¶ 30; [DE 1-7]. The Supplemental Final Judgment remains unsatisfied. Complaint ¶ 32.

In this case, Plaintiff brings fraudulent transfer claims and other claims against Defendant, alleging that Defendant – and Flopro's counsel, who now also represents Defendant in this action – implemented a "Bust Out Scheme," after Plaintiff prevailed against Flopro in the state court litigation, to strip Flopro of its assets in order to hinder, delay, and defraud Plaintiff's collection efforts. *Id.* ¶ 2. Plaintiff alleges, *inter alia*, that Flopro sold the Real Property to a third party around April 2022, that Defendant executed the Special Warranty Deed conveying the Real Property on behalf of Flopro, and that the sale proceeds of approximately $2 million were disbursed to Defendant directly rather than to Flopro, which was entitled to receive the proceeds as the owner of the Real Property. *Id.* ¶¶ 25-28. Plaintiff also alleges that, during the pendency of the state court action, rental income from the Real Property – when Flopro owned the Real Property – was deposited into Flopro's counsel's bank account and transferred directly to Defendant (individually, not on behalf of Flopro). *Id.* ¶ 20. As a result of the alleged transfers of the rental

income ("Rental Income Transfers") and sales proceeds ("Sales Proceeds Transfer") to Defendant, as well as other alleged actions of Defendant, Flopro, and others, Plaintiff has included the following eight counts in its Complaint against Defendant:

I: Avoidance and Recovery of Actual Fraudulent Transfers Pursuant to Florida Statute §§ 726.105(1)(a) and 726.108 – Rental Income Transfers & Sales Proceeds Transfer;

II: Avoidance and Recovery of Constructive Fraudulent Transfers Pursuant to Florida Statute §§ 726.105(1)(b) and 726.108 - Rental Income Transfers & Sales Proceeds Transfer;

III: Avoidance and Recovery of Constructive Fraudulent Transfers Pursuant to Florida Statute §§ 726.106(1) and 726.108 – Rental Income Transfers & Sales Proceeds Transfer;

IV: Preliminary and Permanent Injunction;

V: Civil Conspiracy;

VI: Conversion;

VII: Civil Theft; and

VIII: Liability for Improper & Prohibited Distributions under Fla. Stat. § 605.0406(3).

In the Motion to Dismiss, Defendant first seeks dismissal on personal jurisdiction grounds. Alternatively, Defendant contends that all counts of the Complaint should be dismissed for failure to state a claim upon which relief can be granted. In the Motion to Abstain, Defendant contends that if the Motion to Dismiss is not granted, abstention is warranted under the *Colorado River* doctrine because a parallel action is pending in state court. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). As discussed herein, the Court should reject Defendant's personal jurisdiction challenge, Defendant's request for abstention, and Defendant's request for dismissal of Counts I-III. However, Counts IV-VIII of the Complaint should be dismissed.[1]

---

[1] Defendant's request for dismissal of Counts VI (conversion) and VII (civil theft) is effectively unopposed. In its response, Plaintiff does not oppose dismissal of Counts VI and VII. In fact, on June 16, 2023, Plaintiff filed a Notice of Voluntary Dismissal of Counts Six and Seven of Plaintiff's Complaint Without Prejudice [DE 31]. While Plaintiff's dismissal notice was ineffective and invalid because it only purported to dismiss two claims and not the entire action,

## LEGAL STANDARDS – MOTION TO DISMISS

### I.    PERSONAL JURISDICTION – RULE 12(b)(2)

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *AcryliCon USA, LLC v. Silikal GmbH*, 985 F.3d 1350, 1363-64 (11th Cir. 2021) (quoting *Diamond Crystal Brands, Inc. v. Food Movers Intern., Inc.*, 593 F.3d 1249,1257-58 (11th Cir. 2010)). "To establish personal jurisdiction over a nonresident defendant, the plaintiff has the burden of establishing a prima facie case by presenting enough evidence to withstand a motion for directed verdict." *United States ex rel. v. Mortg. Invs. Corp.*, 987 F.3d 1340, 1356 (11th Cir. 2021) (citing *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268-69 (11th Cir. 2002)). "When a defendant submits non-conclusory affidavits to controvert the allegations in the complaint, the burden shifts back to the plaintiff to produce evidence to support personal jurisdiction." *Don't Look Media LLC v. Fly Victor Ltd.*, 999 F.3d 1284, 1292 (11th Cir. 2021). The factual allegations of the complaint are accepted as true to the extent they are not controverted by the defendant's evidence. *Mortg. Invs. Corp.*, 987 F.3d at 1356 (citation omitted). Further, when a plaintiff submits affidavits to support personal jurisdiction that conflict with the defendant's evidence, all reasonable inferences are drawn in favor of the plaintiff. *Id.*

---

*see Rosell v. VMSB, LLC*, 67 F.4th 1141, 1143-44 (11th Cir. 2023); *In re Esteva*, 60 F.4th 664, 675-78 (11th Cir. 2023); *see also* [DE 35], Counts VI and VII may now be dismissed given that their dismissal is requested in the Motion to Dismiss, and given that Plaintiff has not opposed the request for dismissal of Counts VI and VII.  Because Plaintiff has not opposed Defendant's request for dismissal of Counts VI and VII – and has instead indicated it does not wish to prosecute those counts, at least at this time – I recommend that Counts VI and VII be dismissed.

## II.   <u>FAILURE TO STATE A CLAIM – RULE 12(b)(6)</u>

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief."  Fed. R. Civ. P. 8(a).  Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions"; a "formulaic recitation of the cause of action will not do." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007).  When a claim sounding in fraud is alleged, the complaint "must satisfy the heightened pleading standards embodied in Federal Rule of Civil Procedure 9(b), which requires the plaintiff to 'state with particularity the circumstances constituting fraud.'" *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1216 (11th Cir. 2020) (citation omitted).  To do so, a plaintiff must allege "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiff[ ]; and (4) what the defendants gained by the alleged fraud." *Id.* (citation omitted). "'However, alternative means are also available to satisfy the rule' as long as the defendants receive 'fair notice' of the bases for the claims against them." *Frayman v. Douglas Elliman Realty, LLC*, 515 F. Supp. 3d 1262, 1281 (S.D. Fla. 2021) (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997)).

To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679)).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)).[2]  Courts must accept the factual allegations in the complaint as true and view them in the light most favorable to the plaintiff.  *Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 942 F.3d 1215, 1229 (11th Cir. 2019); *Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1236 (11th Cir. 2019).   But "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citation omitted).  *See also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

## ANALYSIS – MOTION TO DISMISS

### I.   PERSONAL JURISDICTION

#### A.  FLORIDA'S LONG-ARM STATUTE

Under Florida's long-arm statute, § 48.193, Fla. Stat., a defendant may be subject to *specific* personal jurisdiction or *general* personal jurisdiction.  *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018).   General jurisdiction – "jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida" – exists where "the defendant engages in 'substantial and not isolated activity' in Florida."  *Id.* (quoting *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015)); *see also* § 48.193(2) ("A

---

[2] "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."  Fed. R. Civ. P. 10(c); *see also F.T.C. v. AbbVie Prod. LLC*, 713 F.3d 54, 63 (11th Cir. 2013) ("At the motion-to-dismiss stage, we consider the facts derived from a complaint's exhibits as part of the plaintiff's basic factual averments." (citation omitted)).

defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.").

On the other hand, specific jurisdiction – "jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida" – exists for conduct specifically enumerated in § 48.193(1)(a). *Waite*, 901 F.3d at 1312 (quoting *Carmouche*, 789 F.3d at 1204); *see also SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1223 (11th Cir. 2023) ("Florida's long-arm statute subjects to the jurisdiction of Florida state courts anyone 'who personally or through an agent' engages in any of nine enumerated acts, as long as the cause of action arises from that act."). While establishing one of the enumerated acts is necessary for specific jurisdiction to exist, it is not sufficient on its own. *See SkyHop Techs.*, 58 F.4th at 1227-28. "Specific jurisdiction under § 48.193(1) [also] requires a connection or connexity between the enumerated activity in Florida and the cause of action." *Knepfle v. J-Tech Corp.*, 48 F.4th 1282, 1292 (11th Cir. 2022) (internal quotation marks and citation omitted).

Plaintiff contends that both general and specific jurisdiction exist in this case. While I do not agree that Plaintiff has established a prima facie case of general jurisdiction or certain of the enumerated categories of specific jurisdiction on which Plaintiff relies, I do agree that Plaintiff has established specific jurisdiction under § 48.193(1)(a)1, which provides as follows:

> A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
> 1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

§ 48.193(1)(a)1.   In other words, § 48.193(1)(a)1 "provides for personal jurisdiction over defendants in 'any cause of action arising from' the act of '[o]perating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.'"  *Kapila v. RJPT, Ltd.*, 357 So. 3d 241, 246 (Fla. 2d DCA 2023).  Notably, in the long-arm context, a "vast difference" exists between the words "business" and "business venture."  *Id.* (citations omitted).   In fact, "a business venture may be established by showing a lesser involvement than would be required to prove a business."  *Id.* at 246-47 (internal quotation marks and citation omitted).  "Consequently, [o]ne may engage in a business venture without operating, conducting, engaging in or carrying on a business."  *Id.* at 247 (internal quotation marks and citation omitted).  Significantly, "engaging in a single act for profit can amount to a business venture."  *Id.* (quoting *Labbee v. Harrington*, 913 So. 2d 679, 683 (Fla. 3d DCA 2005)).

For purposes of § 48.193(1)(a)1, a defendant's activities "must be considered collectively and show a general course of business activity in the state for pecuniary benefit."  *Id.*  Certain factors that may be relevant to the inquiry include "(1) the presence and operation of an office in Florida; (2) the possession and maintenance of a license to do business in Florida; (3) the number of Florida clients served; and (4) the percentage of overall revenue gleaned from Florida clients."  *Id.* (internal quotation marks and citation omitted); *see also Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005).  Nonetheless, "these factors are not dispositive," and there is "no question that there need be no local office nor agent, no lease, no meeting, no presence of corporate offices in Florida to warrant a finding of engagement in a business venture."  *Kapila*, 357 So. 3d at 247 (citations omitted).  Ultimately, "[t]he question of whether a nonresident is 'doing business' or 'engaged in a business venture' in Florida depends on the unique facts presented in each case."  *Id.* at 246 (citation omitted).  Because cases must be

judged on their own individual facts, courts "cannot resort to a mechanical test, but must judge the quality and nature of the activity involved." *Id.* (citation omitted).

In the Complaint, Plaintiff alleges that Defendant, a citizen of France who resides in the Republic of Mauritius, has been the sole member and managing-member of Flopro (a Florida LLC) at all relevant times (apparently since at least 2013). Complaint ¶ 12. Defendant does not dispute this, but she adds that she has never been a resident or citizen of Florida and that she inherited her ownership interest in Flopro following the death of the original owner. *See* Affidavit of Lydie Bridget Galasso [DE 26-4] ¶¶ 3, 11, 13. She also notes that she has only visited Florida twice in the last five years, but she does not provide any details regarding such visits or the purpose of such visits. *Id.* ¶ 6. And at least one visit appears to have been for the purpose of facilitating the sale of the Real Property,[3] which the Complaint alleges was done for Defendant's own pecuniary benefit given that Defendant effectuated the transfer of all of the sales proceeds to herself.

Other factual allegations in the Complaint that are not expressly refuted by non-conclusory statements in Defendant's affidavit[4] include – but are not limited to – allegations that Defendant: (1) represented that she had a Broward County address in corporate filings and bank records, Complaint ¶ 12(e); (2) "negotiated and executed lease agreements on behalf of Flopro with third party tenants of the Real Property . . . in Broward County, Florida from 2013 through 2022," *id.* ¶ 12(f); (3) "purchased and sold several parcels of real estate individually and through Florida

---

[3] The Special Warranty Deed [DE 1-4], which is attached as an exhibit to the Complaint (and therefore part of the Complaint for all purposes), indicates that it was signed by Defendant in Broward County, Florida.

[4] Although Defendant's affidavit is not entirely conclusory, several of the statements therein are conclusory. *See, e.g.*, [DE 26-4] ¶¶ 4, 9. Additionally, as Plaintiff notes in its response, certain statements in Defendant's affidavit are framed in the present tense (thus failing to demonstrate that such present-tense assertions were also true during the period of time when the events alleged in the Complaint occurred). Notably, as indicated above, reasonable inferences must be drawn in Plaintiff's favor at this stage.

organized entities in Florida from 2013 through 2022," *id.* ¶ 12(g); (4) "executed contracts, as well as other closing documents, pertaining to the sale of the Real Property . . . to a third party in Broward County, Florida during the period October 2021 through April 2022," *id.* ¶ 12(h); (5) "deposited the proceeds from the sale of the Real Property . . . into an account opened and maintained in her individual name at a local bank branch in Broward County, Florida in or about April 2022," *id.* ¶ 12(i); (6) withdrew the sale proceeds from her Broward County account around April 2022 and placed them in her account in a foreign jurisdiction, *id.* ¶ 12(j); and (7) "utilized law firm bank accounts in Broward County, Florida to receive deposits of revenue and other funds belonging to Flopro and to obtain disbursements of such revenue and other funds to herself," *id.* ¶ 12(k).

Plaintiff's unrefuted factual allegations are sufficient to satisfy the conduct specified in § 48.193(1)(a)1, and the limited non-conclusory statements included in Defendant's affidavit do not change that.  In the Motion to Dismiss, Defendant contends that Plaintiff attempts to satisfy § 48.193(1)(a)1 by treating Defendant's membership in Flopro as equivalent to carrying on a business in Florida.  *See* [DE 26] at 7 ("Plaintiff has attempted to allege that [Defendant's] membership in an LLC is the same as a conducting business in Florida.").  In arguing that such membership is insufficient to satisfy § 48.193(1)(a)1, Plaintiff relies on the following holding from a Florida appellate case:

> [B]ecause the Appellants' only "activity" in Florida is their indirect ownership interests in the nursing home's operating and management companies and because . . . they are not engaged in the day-to-day operations of the nursing home, we conclude that Ms. Knobloch did not establish that the Appellants are engaged in substantial and not isolated activity in Florida.

*Schwartzberg v. Knobloch*, 98 So. 3d 173, 182 (Fla. 2d DCA 2012).  Notably, that court made the foregoing statement in support of its finding that general jurisdiction under § 48.193(2) did not

exist.  *See id.* at 182-83.  Nonetheless, the court did note elsewhere that "[o]wnership of a resident subsidiary corporation by an out-of-state parent corporation, *without more*, has been repeatedly deemed insufficient to meet the requirements of section 48.193" and that "[t]he same rule applies to nonresident individual shareholders of corporations resident in Florida."  *Id.* at 181 (citations omitted) (emphasis added).  Thus, if Plaintiff were relying on Defendant's membership alone in Flopro to satisfy the long-arm statute, personal jurisdiction over Defendant would not exist (especially given that Plaintiff initially inherited her interest).

But Plaintiff is evidently relying on much more.  Unlike the defendants in *Schwartzberg*, Defendant controlled the operations of Flopro, and she *directly* held the entire ownership interest in Flopro.  As indicated above, since 2013, Defendant actively conducted various business activities on behalf of Flopro, including negotiating and executing leases with third parties who leased units of the Real Property from Flopro.  What catapults Defendant beyond the § 48.193(1)(a)1 threshold, though, is that she was conducting these business activities for her own pecuniary benefit.  The Complaint alleges that Defendant took the rental income for herself.  Moreover, it also alleges that Defendant sold Flopro's Real Property in Florida and took all of the money (approximately $2 million) for herself.  Thus, the business activities in which Defendant engaged were done for Defendant's own pecuniary benefit, and the quality and nature of Defendant's activities demonstrate that Defendant operated, conducted, engaged in, or carried on a business or – at the very least – business venture in Florida.

Connexity also exists here because Plaintiff's claims arise from Defendant's business activities in Florida.  The term "arising from," as used in § 48.193(1)(a), is "broad."  *Kapila*, 357 So. 3d at 249.  A cause of action arises from a business activity so long as there is a "direct affiliation," "nexus," or "substantial connection" between the cause of action and business activity.

*Id.* Proximate cause is not required. *Id.* By way of example, in *Kapila*, where the plaintiff asserted fraudulent transfer claims related to distributions that the defendant received from a Florida entity in which it purchased membership interests, the court found that the requisite connection existed between the plaintiff's fraudulent transfer claims and the defendant's business activity. *Id.* at 249-50.[5] The court explained that the distributions at issue were a "natural and intended consequence" of the defendant's "acquisition of its membership interests," and therefore determined that a direct affiliation, nexus, or substantial connection existed between the two. *Id.* at 250. In so finding, the court even rejected the defendant's argument that connexity did not exist because the defendant was not the one that made the decision to make the distributions at issue. *Id.* Rather, the court found that because the defendant's negotiated purchases of membership interests granted the defendant the right to distributions, there was enough to satisfy the connexity requirement. *Id.*

The case for connexity is even stronger here. That is because Defendant was the one who made the decision to transfer the rental income and sales proceeds belonging to Flopro to herself. And it is those very transfers that are the subject of Plaintiff's fraudulent transfer claims. Therefore, a direct affiliation, nexus, and substantial connection exist between Defendant's business activities and the fraudulent transfer claims asserted against Defendant in this case.

## B. DUE PROCESS CLAUSE

Although the Florida long-arm statute does not stand in the way of personal jurisdiction here, the Court must still examine whether exercising personal jurisdiction over Defendant "would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which requires that the defendant have minimum contacts with the forum state and that the exercise

---

[5] The court recognized that although fraudulent transfer claims do not give rise to specific jurisdiction under § 48.193(1)(a)2, they do not preclude jurisdiction under § 48.193(1)(a)1. *See Kapila*, 357 So. 3d at 249 n.2.

of jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice." *SkyHop Techs.*, 58 F.4th at 1222 (internal quotation marks and citation omitted).  In specific jurisdiction cases, courts examine the following:

> (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

*Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (citations omitted). "The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, a defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* (internal quotation marks and citation omitted). Here, Plaintiff has established the first two prongs, and Defendant has failed to make a compelling case as to the third prong.

First, Plaintiff's claims do arise out of or relate to at least one of Defendant's contacts with Florida.  Under this prong, "we look to the affiliation between the forum and the underlying controversy, *focusing on any activity or occurrence that took place in the forum*." *Herederos De Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.*, 43 F.4th 1303, 1310 (11th Cir. 2022) (quoting *Waite*, 901 F.3d at 1314); *see also SkyHop Techs.*, 58 F.4th at 1229 ("[W]e focus on . . . whether there is a strong relationship among the defendant, the forum, and the litigation. The principal way to establish this relationship is through an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." (internal citations and quotation marks omitted)).  Notably, "direct causation" is not required. *SkyHop Techs.*, 58 F.4th at 1229 (citing *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021)); *see also Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1275 (11th Cir. 2022) ("Importantly, the Supreme Court recently

rejected the contention that specific jurisdiction may attach only when the defendant's forum conduct directly gave rise to the plaintiff's claims." (citing *Ford Motor*, 141 S. Ct. at 1026)). Rather, the first prong "contemplates that some relationships will support jurisdiction without a causal showing." *SkyHop Techs.*, 58 F.4th at 1229 (quoting *Ford Motor*, 141 S. Ct. at 1026).

Here, a strong relationship exists between Defendant, the State of Florida, and the litigation.  As Plaintiff contends, Defendant conducted commercial leasing activities with third parties in the State of Florida, leasing units of the Real Property in Florida to those third parties for her own pecuniary benefit.  Additionally, Defendant pursued the sale of the Real Property for her own pecuniary benefit as well, and she personally executed the deed to the Real Property while in Florida.[6]  Now, Plaintiff is pursuing the claims in this case, which stem from Defendant's ties to, and activities in, Florida, including the opening and use of a Florida bank account to facilitate the transfer of the proceeds from the sale of the Real Property.  Thus, the first prong is satisfied.

Second, Defendant purposefully availed herself of the benefit of Florida's laws.  To satisfy this prong, a defendant must have contacts with the forum state that were the defendant's "own choice and not 'random, isolated, or fortuitous.'"  *SkyHop Techs.*, 58 F.4th at 1230 (quoting *Ford Motor*, 141 S. Ct. at 1025).  "[T]hose contacts must show that the defendant deliberately reached out beyond its home, such as by entering a contractual relationship centered in the forum."  *Id.* (internal quotation marks and citation omitted).  Initially, Defendant's contacts with Florida may have been fortuitous and not the result of Defendant's own choice given that Defendant inherited her membership interest in Flopro.  But things quickly changed.  Defendant actively negotiated and entered into lease agreements with Florida clients on behalf of Flopro (to lease units of the

---

[6] "[A]lthough physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the State . . . is certainly a relevant contact." *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (internal citations omitted).

Real Property in Florida to those parties), and significantly, she took the rental income for herself. She likewise sold the Real Property after a Florida creditor obtained a judgment against Flopro and took all of the proceeds for herself in an attempt to prevent Plaintiff from satisfying its judgment.   Ultimately, Defendant chose to invoke the benefit of Florida's laws and chose to do business in Florida for her own personal benefit.   Thus, Defendant purposefully availed herself of the privilege of conducting business activities in Florida and engaged in conduct directly aimed at Florida such that she could have reasonably anticipated being haled into court in Florida.

Finally, Defendant has failed to demonstrate that exercising personal jurisdiction would run counter to "traditional notions of fair play and substantial justice."   This prong considers four factors: (1) "the burden on the defendant"; (2) "the forum's interest in adjudicating the dispute"; (3) "the plaintiff's interest in obtaining convenient and effective relief"; and (4) "the judicial system's interest in resolving the dispute."   *Del Valle*, 56 F.4th at 1277 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).   Although Defendant mentions these factors, *see* [DE 26] at 12, she fails to specifically address any of them in the context of this case. Therefore, Defendant has fallen woefully short of making the requisite "compelling case."[7]   *Cf. SkyHop Techs.*, 58 F.4th at 1231 ("Indyzen has not even attempted to demonstrate that it satisfies the relevant factors. We therefore conclude that jurisdiction in Florida is consistent with the Due Process Clause.").

---

[7] In fact, Defendant asserts in the Motion to Dismiss that only the issue of minimum contacts – and not the issue of "fair play and substantial justice" – "needs to be examined in any detail."   [DE 26] at 10.

## II.    **FAILURE TO STATE A CLAIM**

### A.  **COUNTS I-III (FRAUDULENT TRANSFER)**

Defendant's request for dismissal of Counts I-III should be denied.  As an initial matter, Defendant's sole argument in the Motion to Dismiss for dismissal of Counts I-III is that Plaintiff failed to plead its fraudulent transfer claims with particularity in accordance with Rule 9(b).  *See* Motion to Dismiss at 13-14; *see also* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").  While Defendant's argument that Rule 9(b)'s particularity requirement applies to fraudulent transfer claims has some support, several cases in this district have found that fraudulent transfer claims are not subject to the heightened pleading standard for fraud claims under Rule 9(b).  *See, e.g.*, *Cochrane v. Greener Energy, LLC*, No. 20-82154-CIV, 2021 WL 9563201, at *4 (S.D. Fla. Sept. 17, 2021); *Letzer v. Radiant Creations Grp., Inc.*, No. 16-14349-CIV, 2016 WL 7388357, at *3-4 (S.D. Fla. Dec. 19, 2016); *Sallah v. Flansburg*, No. 16-CV-80032, 2016 WL 11811341, at *2 (S.D. Fla. Sept. 13, 2016); *Sallah v. Fahrenheit Venture Fund LLC*, No. 14-22150-CIV, 2014 WL 12629450, at *3 n.3 (S.D. Fla. Sept. 5, 2014).

At any rate, the Court need not decide whether Rule 9(b) applies here because even if it does, the Motion to Dismiss wholly fails to engage with the allegations of the Complaint.  In other words, regardless of what pleading standard applies, Defendant fails to explain why the allegations of the Complaint do not satisfy that pleading standard.  Thus, Defendant has failed to meet her burden of showing that Counts I-III should be dismissed.[8]

---

[8] "On a Rule 12(b)(6) motion to dismiss, [t]he moving party bears the burden to show that the complaint should be dismissed." *Madinya v. Portfolio Recovery Assocs., LLC*, No. 18-CV-61138, 2018 WL 4510151, at *5 (S.D. Fla. Sept. 20, 2018) (quoting *Sprint Sols., Inc. v. Fils-Amie*, 44 F. Supp. 3d 1224, 1228 (S.D. Fla. 2014)) (internal quotation marks omitted); *see also Cohen v. Bd. of Trustees of the Univ. of the D.C.*, 819 F.3d 476, 481 (D.C. Cir. 2016) (recognizing that Rule

Moreover, notwithstanding Defendant's failure to meet her burden, the allegations of the Complaint plausibly set forth fraudulent transfer claims and more than adequately put Defendant on notice of was allegedly transferred.  *See* Complaint ¶¶ 20, 28 (defining the "Rental Income Transfers" and "Sales Proceeds Transfer").  As indicated above, Count I alleges *actual* fraudulent transfers, and Counts II and III allege *constructive* fraudulent transfers (under different sections of Chapter 726 of the Florida Statutes).[9]  As discussed herein, all three fraudulent transfer counts are adequately pled.

### 1. Actual Fraudulent Transfer (Count I)

To prove that an actual fraudulent transfer occurred, a plaintiff must show that a transfer was made "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor."  § 726.105(1)(a), Fla. Stat.  Whether a transfer was made with the requisite intent is determined based on considering several non-exhaustive factors, which are commonly referred to as "badges of fraud."  *See Wiand v. Lee*, 753 F.3d 1194, 1200 (11th Cir. 2014); *see also Yaralli v. Am. Reprographics Co., LLC*, 165 So. 3d 785, 788 (Fla. 4th DCA 2015) ("Because the determination of actual fraudulent intent can be difficult, courts look to certain 'badges of fraud' to determine whether the transfer was made with the intent to defraud creditors." (quoting *Gen. Elec. Co. v. Chuly Int'l, LLC*, 118 So. 3d 325, 327 (Fla. 3d DCA 2013))).  Those factors are whether:

(a)   The transfer or obligation was to an insider.

---

12(b)(6) places the burden of persuasion on the moving party).  "There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it[.]"  *Madinya*, 2018 WL 4510151, at *5 (quoting *Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995)).

[9] The requirements of the specific types of fraudulent transfers that are alleged are discussed in the next two paragraphs.  However, all of the fraudulent transfer claims alleged also require that a plaintiff be a present and/or future creditor (as defined under Chapter 726) of the alleged transferor. Here, Plaintiff has clearly alleged that it qualifies as a creditor of Flopro for purposes of all of its fraudulent transfer claims (and Defendant does not appear to contend otherwise).

(b)   The debtor retained possession or control of the property transferred after the transfer.

(c)   The transfer or obligation was disclosed or concealed.

(d)   Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.

(e)   The transfer was of substantially all the debtor's assets.

(f)   The debtor absconded.

(g)   The debtor removed or concealed assets.

(h)   The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.

(i)   The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

(j)   The transfer occurred shortly before or shortly after a substantial debt was incurred.

(k)   The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

§ 726.105(2), Fla. Stat. "While a single badge of fraud may only create a suspicious circumstance and may not constitute the requisite fraud to set aside a conveyance, several of them when considered together may afford a basis to infer fraud." *Wiand*, 753 F.3d at 1200 (quoting *Johnson v. Dowell*, 592 So. 2d 1194, 1197 (Fla. 2d DCA 1992)) (cleaned up); *see also Yaralli*, 165 So. 3d at 789.   Consideration may also be given to other factors and to all of the circumstances surrounding a transfer. *Wiand*, 753 F.3d at 1200.

As indicated above, the Complaint specifically identifies the transfers at issue here. Additionally, in Count I, Plaintiff alleges the existence of various badges of fraud in order to plausibly establish intent for purposes of its actual fraudulent transfer claim. *See* Complaint ¶ 39. First, Plaintiff alleges that the transfers were to an insider, and elsewhere in the Complaint Plaintiff includes factual allegations making clear that Defendant, the alleged transferee, is the sole member of Flopro. *See id.* ¶¶ 12, 39a.  In other words, the factual allegations, accepted as true, make clear that Plaintiff is an insider.  Second, Plaintiff alleges that the transfers were concealed. *Id.* ¶ 39b. Relatedly, in the general allegations of the Complaint, Plaintiff discusses the steps that Defendant

allegedly pursued to implement her alleged Bust Out Scheme, and Plaintiff alleges how and when it learned that Flopro sold its Real Property. *See id.* ¶¶ 2-9, 25-29. Third, Plaintiff alleges that before the transfers, Flopro had been sued or threatened with suit. *Id*. ¶ 39c. In support of this allegation, Plaintiff alleges facts laying out certain history related to the underlying state court case and showing that the alleged transfers occurred after the lawsuit was filed. *See id.* ¶¶ 1-2, 17-32. Fourth, Plaintiff alleges that the transfers were of substantially all of Flopro's assets, and Plaintiff points to a state court filing by Flopro from a few months after the Sales Proceeds Transfer where Flopro stated it had no assets. *See id.* ¶¶ 9, 39d. Fifth, Plaintiff alleges that no consideration was provided to Flopro in exchange for the transfers (and consequently that reasonably equivalent value was not provided). *See id.* ¶ 39g. Given that Defendant allegedly received at least $2 million in transfers, *see id.* ¶¶ 20, 28, and given that she allegedly provided nothing in exchange for the transfers, Plaintiff's allegations regarding a lack of reasonably equivalent value obviously cross the plausibility threshold. Sixth, the Complaint indicates, at a minimum, that Flopro became insolvent as a result of the Sales Proceeds Transfer; again, Plaintiff points to Flopro's own statement from October 2022 that Flopro had no assets or ability to satisfy Plaintiff's judgment against Flopro. *See id.* ¶¶ 9, 39h.

Thus, Plaintiff has alleged facts demonstrating at least six badges of fraud – those identified in section 726.105(2)a, c, d, e, h, and i. And Plaintiff at least indicates that other badges and circumstances also support its allegations of actual fraudulent intent. Regardless, the presence of at least six badges of fraud, combined with the allegations specifying what was transferred, is more than enough to allow Plaintiff to proceed on its actual fraudulent transfer claim. *Cf. United States v. S. Cap. Constr., Inc.*, 758 F. App'x 676, 681 (11th Cir. 2018) (affirming district court's finding

of actual fraud where district court's determination was based on three badges of fraud and other circumstantial evidence).  Therefore, the Motion to Dismiss should be denied as to Count I.

### 2.  Constructive Fraudulent Transfer (Counts II and III)

Unlike actual fraudulent transfers, constructive fraudulent transfers are not focused upon intent.  Rather, they turn on whether a transfer was made for less than "reasonably equivalent value" and whether an additional element is satisfied.  Specifically, the constructive fraudulent transfer claim alleged in Count II requires both a transfer made (by Flopro to Defendant) without Flopro "receiving a reasonably equivalent value in exchange for the transfer" and that Flopro:

> 1. Was engaged or was about to engage in a business or a transaction for which the remaining assets of [Flopro] were unreasonably small in relation to the business or transaction; or
> 2. Intended to incur, or believed or reasonably should have believed that [Flopro] would incur, debts beyond [Flopro's] ability to pay as they became due.

§ 726.105(1)(b), Fla. Stat.  As to the constructive fraudulent transfer claim alleged in Count III, it requires plausibly alleging that Flopro made a transfer "without receiving a reasonably equivalent value in exchange for the transfer . . . and [Flopro] was insolvent at that time or [Flopro] became insolvent as a result of the transfer."  § 726.106(1), Fla. Stat.

As discussed in the preceding section, Plaintiff has adequately identified the alleged transfers and has adequately alleged that the transfers were made for a lack of reasonably equivalent value (because no consideration was provided) – the first element of Plaintiff's constructive fraudulent transfer claims.  The second element of each constructive fraudulent transfer claim is adequately alleged as well.  Regarding Plaintiff's claim under § 726.105(1)(b), it is obvious (based on the allegations of the Complaint), at a minimum, that when the transfers were made, Flopro intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.  After all, the Complaint clearly alleges that by

the time Flopro made the Sales Proceeds Transfer (transferring away what appears to have been the last of its assets), the first judgment against Flopro had already been entered, and Flopro knew, or should have known, that a fee judgment in the neighborhood of $300,000 was likely on the horizon. *See* Complaint ¶¶ 22-23. Regarding Plaintiff's claim under § 726.106(1), as already discussed in the preceding section, the Complaint clearly alleges, at a minimum, that Flopro became insolvent as a result of the Sales Proceeds Transfer. Accordingly, Plaintiff has pled sufficient facts to plausibly allege the constructive fraudulent transfer claims asserted in both Counts II and III.

### B. COUNT IV (INJUNCTION)

Count IV should be dismissed. In Count IV, Plaintiff seeks preliminary and permanent injunctive relief to prevent Defendant from, among other things, transferring the "Rental Income Transfers, Sales Proceeds Transfer, or the proceeds, products, and/or replacements thereof." Complaint ¶ 53. Plaintiff alleges that such relief is available under sections 726.108(b) and 726.108(c)1 of the Florida Statutes.

Section 726.108 provides certain *remedies* to a creditor pursuing a fraudulent transfer claim. *SE Prop. Holdings, LLC v. Welch*, 65 F.4th 1335, 1344 (11th Cir. 2023). Relevant here, section 726.108(1)(b) permits the creditor to "seek an attachment against the transferred asset (or other property of the *transferee*)," and section 726.108(1)(c)1 permits the creditor to seek "[s]ubject to applicable principles of equity," "an injunction against further disposition of the asset by either the debtor or transferee . . . ." *Id.* Thus, as an initial matter, Count IV simply seeks a remedy for Counts I-III. In other words, it does not state an independent cause of action. *See Pronman v. Styles*, 645 F. App'x 870, 872 n.1 (11th Cir. 2016). For this reason, Count IV should be dismissed.

While injunctive relief could instead be sought as a remedy under Counts I-III if available under "applicable principles of equity," Defendant correctly points out that the allegations of the Complaint foreclose such relief – or, at a minimum, fail to plausibly plead entitlement to injunctive relief.  Importantly, a plaintiff seeking injunctive relief under section 726.108 must still meet the typical requirements for injunctive relief, including imminent, irreparable injury.  *Welsh v. Martinez*, No. 2:22-CV-216-JLB-NPM, 2022 WL 2356971, at *5 n.5 (M.D. Fla. June 30, 2022); *Regions Bank v. Kaplan*, No. 8:16-CV-2867-T-23AAS, 2017 WL 3446914, at *2 (M.D. Fla. Aug. 11, 2017).  Again, section 726.108(c) plainly provides that the remedies available thereunder are "[s]ubject to applicable principles of equity."  The problem here is that Counts I-III allege fraudulent transfers of money (the rental income and sales proceeds) and, more significantly, seek a money judgment on account of the alleged fraudulent transfers, which would fully compensate Plaintiff for the alleged fraudulent transfers.  Notably, an irreparable injury is one that a money judgment will not be able to remedy.  *Kaplan*, 2017 WL 3446914, at *3; *see also Welsh*, 2022 WL 2356971, at *3.  Because a money judgment is available and will fully compensate Plaintiff if Plaintiff prevails on Counts I-III, the Complaint fails to plausibly allege that irreparable injury will result without injunctive relief.  Therefore, Count IV should be dismissed.

### C.  COUNT V (CONSPIRACY)

Count V should be dismissed.  "Florida does not recognize civil conspiracy as a freestanding tort."  *Banco de los Trabajadores v. Cortez Moreno*, 237 So. 3d 1127, 1136 (Fla. 3d DCA 2018) (citing *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 764 F.3d 1327, 1338-39 (11th Cir. 2014)).  After all, "[t]he gist of a civil conspiracy is not the conspiracy itself, but the underlying civil wrong occurring pursuant to the conspiracy and which results in the plaintiff's damages."  *Id.* (citation omitted).  Thus, as a general matter, "[t]he conspiracy does not give rise to an independent

cause of action, but is a device to allow a plaintiff to spread liability to those involved in causing the underlying tort." *Id.* (citation omitted).

There is, however, one *narrow* "force of numbers exception" to the general rule that one cannot state an independent cause of action for civil conspiracy. *See Kee v. Nat'l Rsrv. Life Ins. Co.*, 918 F.2d 1538, 1542 (11th Cir. 1990) (discussing the exception and noting that it is intended to be a "narrow" exception); *see also Espana Informatica, S.A. v. Top Cargo, Inc.*, No. 08-20276-CIV, 2008 WL 11331683, at *11-12 (S.D. Fla. Apr. 28, 2008). To bring a conspiracy claim under this exception – a conspiracy claim that is not based on an underlying tort – a plaintiff must establish that the "conduct complained of would not be actionable if done by one person, but by reason of force of numbers or other exceptional circumstances, the defendants possess some peculiar power of coercion, which gives rise to an independent tort of conspiracy, sometimes referred to as an 'economic boycott.'" *Kee*, 918 F.2d at 1542 (quoting *Am. Diversified Ins. Servs., Inc. v. Union Fid. Life Ins. Co.*, 439 So. 2d 904, 906 (Fla. 2d DCA 1983)); *see also Churruca v. Miami Jai-Alai, Inc.*, 353 So. 2d 547, 550 (Fla. 1977) ("[I]f the plaintiff can show some peculiar power of coercion possessed by the conspirators by virtue of their combination, which power an individual would not possess then conspiracy itself becomes an independent tort."); *Greenberg v. Mount Sinai Med. Ctr. of Greater Miami, Inc.*, 629 So. 2d 252, 256 (Fla. 3d DCA 1993) (recognizing that "a unique amalgamation of power" must be alleged). The exception requires both "a malicious motive and coercion through numbers or economic influence." *Churruca*, 353 So. 2d at 550. Allegations of anti-competitive conduct are generally necessary to state an independent conspiracy claim under the exception. *See In re Jan. 2021 Short Squeeze Trading Litig.*, 584 F. Supp. 3d 1161, 1203 (S.D. Fla. 2022); *Banco de los Trabajadores*, 237 So. 3d at 1136 n.9. "When the concerted acts of the defendants do not create a greater harm than if the acts

were committed by one person alone, then there can be no recovery." *Martin v. Marlin*, 529 So. 2d 1174, 1179 (Fla. 3d DCA 1988); *see also Kee*, 918 F.2d at 1542 ("The result of the defendants' concerted action 'must be different from anything that could have been accomplished separately.'").

Here, the parties disagree over whether the exception is met.[10]  Plaintiff's conspiracy claim is premised upon Defendant allegedly conspiring "with others to make Flopro an assetless and dissolved entity" once the August 2021 jury verdict was rendered in the state court litigation between Plaintiff and Flopro.  Complaint ¶ 66; *see also id.* ¶¶ 2-8, 67-74.  The "others" with whom Defendant allegedly conspired are not identified in Count V.  However, it is clear from paragraph 2 of the Complaint that "others" refers to Defendant's counsel in this action (Flopro's counsel in the state court case).  It is unclear whether "others" is intended to include anyone else.  Plaintiff appears to allege that the conspiracy between Defendant and her counsel is sufficient to satisfy the narrow conspiracy exception.  *See id.* ¶ 71 ("The combination of the Defendant and others was a peculiarly effective method of concealing the scheme to defraud Plaintiff . . . because it enabled the Defendant to share her fraudulent objective with others and conceal it from Plaintiff . . . based upon the presumed existence of privileges and confidentiality.").

The exception, however, is not met here (or, at a minimum, not plausibly alleged).  That is because the Complaint fails to allege the type of anti-competitive conduct that is the *sine qua non* of an independent conspiracy claim.  A couple examples from other cases help illustrate what is needed to satisfy the exception.  For instance, in *Churruca*, the Florida Supreme Court found that a group of professional jai-alai players could state an independent conspiracy claim against fronton

---

[10] The conspiracy count in the Complaint is not based on an underlying tort.  Rather, Plaintiff alleges (and argues) that the exception applies.  *See* Complaint ¶¶ 64-74; Motion to Dismiss at 23-25.

owners who allegedly conspired to ensure that the players would not be able to obtain employment

with any of the fronton owners.  *See* 353 So. 2d at 548-51.  The Court explained:

> It is true that the respondent frontons are individually entitled to employ whomever
> they wish. They may even decide in combination to refuse employment to
> prospective employees if they believe those persons would be unsatisfactory.
> However, if the concerted effort of the fronton owners is designed maliciously for
> the purpose of beggaring petitioners by depriving them of their livelihood, the
> employers are guilty of tortious conspiracy.
> . . .
> When the conduct of a combination of employers, maliciously conceived and
> executed, amounts to a "black listing" of employees so as to permanently deprive
> them of the means of earning a livelihood, a common law cause of action is
> presented upon which a jury may return damages.

*Id.* at 549-51.

In another case – where a Florida appellate court found that an independent conspiracy

claim could be stated – the plaintiffs owned four condominium units in a building that were

scheduled to be auctioned.  *Walters v. Blankenship*, 931 So. 2d 137, 138-39 (Fla. 5th DCA 2006).

Other unit owners allegedly conspired to drive down the auction price by posting for-sale-by-

owner signs by their own units on the date of the auction.  *Id.* at 139.  In doing so, they made it

appear as if the majority of the units in the building were for sale, which had the effect of lowering

what the plaintiffs were able to realize at auction (causing the plaintiffs to incur a substantial loss).

*Id.* at 139-41.  The court explained that had only one of the other unit owners posted a for-sale-by-

owner sign, that would have been unlikely to significantly impact the auction.  *Id.* at 141.  It was

only by acting in concert that the other unit owners were able to accomplish the object of their

conspiracy.  *See id.* at 139-41.  As such, the court found that the plaintiffs could state an

independent conspiracy claim.  *Id.*

Here, nothing even remotely similar to the types of anti-competitive conduct in *Churruca*

and *Walters* is alleged.  While perhaps having the assistance of counsel provided some advantage

to Defendant in implementing the alleged Bust Out Scheme, Defendant had the power on her own to carry out the alleged conspiracy. Simply stated, the requisite "peculiar power of coercion" or "unique amalgamation of power" is not present here. Therefore, Plaintiff's conspiracy claim should be dismissed.

### D.  COUNT VIII (IMPROPER DISTRIBUTIONS)

Count VIII of the Complaint should be dismissed. In Count VIII, Plaintiff brings a claim under section 605.0406(3) of the Florida Statutes, which provides that "[a] person who receives a distribution knowing that the distribution violated s. 605.0405 is *personally liable to the limited liability company*, but only to the extent that the distribution received by the person exceeded the amount that could have been properly paid under s. 605.0405." Plaintiff alleges that Defendant is liable under this statute on the basis that the Rental Income Transfers and Sales Proceeds Transfer were distributions from Flopro to Defendant that violated section 605.0405, which Defendant knew. *See* Complaint ¶¶ 95-97. However, as Defendant correctly argues, section 605.0406 only provides for liability to the limited liability company from which she allegedly received the improper distribution (here, Flopro). In other words, the plain language of the statute does not make the recipient of an improper distribution liable to a creditor of the limited liability company or to anyone else; the statute provides for liability to the limited liability company alone. *See MerchACT, LLC v. Ronski*, No. 9:20-CV-82043-WPD, 2022 WL 3682207, at *9 (S.D. Fla. Jan. 13, 2022) (noting that the language of section 605.0406(3) "make[s] clear that the right to recovery resulting from an alleged improper distribution belongs to the company"). A contrary conclusion would impermissibly rewrite the statute. Therefore, Count VIII should be dismissed.[11]

---

[11] Plaintiff is not without recourse. As reflected above, Plaintiff, as a creditor, can pursue fraudulent transfer claims against Defendant to attempt to recover the alleged improper distributions (the Rental Income Transfers and Sales Proceeds Transfer).

## ANALYSIS – MOTION TO ABSTAIN

*Colorado River* abstention is not appropriate here.  "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Ambrosia Coal & Const. Co. v. Pages Morales*, 368 F.3d 1320, 1331 (11th Cir. 2004) (quoting *Colorado River*, 424 U.S. at 813).  And "*Colorado River* abstention is permissible in fewer circumstances than are the other abstention doctrines, which themselves carve out only slender exceptions to the robust duty to exercise jurisdiction." *Id.*  "Since the general rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter' in federal court, and since the federal courts have a virtually unflagging obligation to exercise their jurisdiction, *Colorado River* abstention" is impermissible absent "exceptional circumstances." *Jackson-Platts v. Gen. Elec. Cap. Corp.*, 727 F.3d 1127, 1140 (11th Cir. 2013) (quoting *Colorado River*, 424 U.S. at 817-18).  "'Only the clearest of justifications' merits abstention." *Id.* (quoting *Colorado River*, 424 U.S. at 819).  A federal court may only abstain under *Colorado River* if (1) a parallel state court proceeding exists, and (2) principles of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation," demand abstention.  *Gold-Fogel v. Fogel*, 16 F.4th 790, 799-800 (11th Cir. 2021); *see also Jackson-Platts*, 727 F.3d at 1140.

Provided that parallel proceedings exist, federal courts should consider the following factors when determining whether to grant a request for abstention:

> (1) the order in which the courts assumed jurisdiction over property; (2) the relative inconvenience of the fora; (3) the order in which jurisdiction was obtained and the relative progress of the two actions; (4) the desire to avoid piecemeal litigation; (5) whether federal law provides the rule of decision; and (6) whether the state court will adequately protect the rights of all parties.

*Jackson-Platts*, 727 F.3d at 1141 (quoting *TranSouth Fin. Corp. v. Bell*, 149 F.3d 1292, 1294-95 (11th Cir. 1998)); *see also Gold-Fogel*, 16 F.4th at 800 (wording the factors in a slightly different manner and switching the order of the third and fourth factor).  The following factors may also be relevant: (1) "the vexatious or reactive nature of either the federal or the state litigation," and (2) "whether the concurrent cases involve a federal statute that evinces a policy favoring abstention." *Gold-Fogel*, 16 F.4th at 800 (quoting *Ambrosia Coal*, 368 F.3d at 1331).

Nonetheless, the foregoing factors are non-exhaustive, and no single factor is dispositive. *Id.*; *Jackson-Platts*, 727 F.3d at 1141.  Moreover, "the factors must be considered flexibly and pragmatically." *Ambrosia Coal*, 368 F.3d at 1332.  In other words, they should not be applied "mechanically" because the "weight to be given to any one factor may vary greatly from case to case." *Gold-Fogel*, 16 F.4th at 800 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)).  Courts should "carefully balance the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Id.* (quoting *Moses H. Cone*, 460 U.S. at 16) (cleaned up); *see also Jackson-Platts*, 727 F.3d at 1141 ("[W]e are required to weigh the factors with a heavy bias favoring the federal courts' obligation to exercise the jurisdiction that Congress has given them." (citations omitted)).

Here, a parallel state proceeding exists, which Plaintiff does not appear to dispute.  The "threshold" issue of whether parallel state and federal proceedings exist turns on whether the proceedings involve "substantially the same parties and substantially the same issues." *Id.*; *Jackson-Platts*, 727 F.3d at 1140.  The proceedings need not be *identical* or *exactly parallel*, only "substantially similar." *Gold-Fogel*, 16 F.4th at 801; *see also Ambrosia Coal*, 368 F.3d at 1329-30.

The relevant state court matter here involves state court proceedings supplementary against Defendant under section 56.29 of the Florida Statutes.  After obtaining its supplemental fee and cost judgment against Flopro, Plaintiff filed – in state court in January 2023 – a Motion for Proceedings Supplementary to Execution to Implead Third Parties, and for Issuance of Notices to Appear [DE 26-1].  Therein, Plaintiff included many of the same allegations that are included in the Complaint in this case and sought impleader of Defendant and two others, the issuance of notices to appear to the three impleaded parties pursuant to section 56.29(2), and leave to file a supplemental complaint under section 56.29(9), among other relief.   A few days after the motion was filed, the state court entered an order granting the motion [DE 26-2] and issued the three requested notices to appear.

The Notice to Appear directed to Defendant indicated that the proceedings supplementary were commenced against her to satisfy a judgment by application of, among other things, (1) "proceeds related to [Flopro's] conveyance of the Real Property Transfer . . . in or about March 2022," and (2) "rental payment receipts from tenants of the Real Property which were payable and owed to [Flopro] from August 2021 through the present."  [DE 26-3].  In other words, the Notice to Appear seeks to recover (from Defendant) the alleged transfers at issue in this case (the Rental Income Transfers and the Sales Proceeds Transfer).  And Plaintiff's state court proceedings supplementary motion indicates that Plaintiff advanced theories for recovery substantially similar to the theories it advances in this case.  Thus, this case and the state court proceedings supplementary against Defendant are substantially similar matters involving the same parties and substantially the same issues.  Therefore, the two proceedings are parallel proceedings.

However, although parallel proceedings exist, I find, based on my consideration of the relevant factors and circumstances, that abstention is inappropriate because exceptional

circumstances are not present.  In the Motion to Abstain, Defendant addresses the first six factors

set forth above, as well as the additional factor regarding the vexatious or reactive nature of the

litigation.  Defendant contends that six factors favor abstention and that one – inconvenience of

the fora – is neutral.  In its response, Plaintiff addresses the first six factors but does not address

the additional factor.  As to the first six factors, Plaintiff contends that five weigh against abstention

and that one – adequate protection of the parties' rights – is neutral.  Below, I address the factors

individually, but I ultimately balance the factors given that the Court is required to consider them

in a flexible and pragmatic, not mechanical, manner in deciding whether wise judicial

administration demands abstention.[12]

(1) **Jurisdiction over Property:** Because this case and the pending state court proceeding

against Defendant are not *in rem* proceedings, this factor does not favor abstention.  *See Ambrosia*

*Coal*, 368 F.3d at 1332 ("Because the relevant cases are not proceedings in rem, neither court has

jurisdiction over property, and the first *Colorado River* factor does not favor abstention."); *see also*

*Jackson-Platts*, 727 F.3d at 1141.

(2) **Inconvenience of the Fora:** This factor primarily focuses "on the physical proximity

of the federal forum to the evidence and witnesses."  *Jackson-Platts*, 727 F.3d at 1141 (quoting

*Ambrosia Coal*, 368 F.3d at 1332).  Because the federal and state fora are equally convenient here

– the courthouses are less than one mile away from each other – this factor weighs against

abstention.  *See id.*

(3) **Order in Which Jurisdiction Was Obtained & Relative Progress:** This factor asks

"which forum acquired jurisdiction first."  *Id.* at 1142.  However, "[w]hat matters is not so much

---

[12] Because neither party addresses whether the federal and state proceedings involve a federal
statute with a policy favoring abstention, I do not either.

the 'chronological order in which the parties initiated the concurrent proceedings, but the progress of the proceedings and whether the party availing itself of the federal forum should have acted earlier.'" *Id.* (quoting *TranSouth Fin.*, 149 F.3d at 1295); *see also Ambrosia Coal*, 368 F.3d at 1333 ("The Supreme Court clarified that, despite somewhat misleading phrasing in *Colorado River,* this factor 'should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions.'" (quoting *Moses H. Cone*, 460 U.S. at 21)).  Where both proceedings have progressed equally, "that would not favor abstention." *Jackson-Platts*, 727 F.3d at 1142.

Here, although the state court proceedings were commenced first, this case has progressed further than the state court proceedings supplementary *against Defendant* given that Defendant has not even been served in connection with the state court proceedings supplementary.  Therefore, this factor weighs against abstention.

**(4) Piecemeal Litigation:** "The fourth *Colorado River* factor monitors the potential for piecemeal litigation." *Id.*  "Run of the mill piecemeal litigation will not do: this factor 'does not favor abstention unless the circumstances enveloping those cases will likely lead to piecemeal litigation that is *abnormally excessive or deleterious*.'" *Id.* (quoting *Ambrosia Coal*, 368 F.3d at 1333) (emphasis added).  "And this factor does not favor abstention when litigation is 'inevitably piecemeal.'" *Id.* (citation omitted).

Neither party provides any real analysis of this factor in the context of this case.  In the Motion to Abstain, Defendant merely states that "it is absolutely certain that [Plaintiff] brought this claim to federal court with the intention of creating piecemeal litigation to require [Defendant] to incur expenses in two (2) courts" (adding two brief explanatory parentheticals after this sentence).  [DE 27] at 6-7.  Plaintiff similarly addresses this factor in a conclusory manner in its

response, stating the factor does not "favor abstention because litigation is inevitably piecemeal when it involves multiple parties subject to different theories of liability and distinct defenses." [DE 33] at 7.  Then, in her reply, Defendant states that "it is clear that Plaintiff hopes to attain relief in federal court if it were to receive an unfavorable outcome in state court."  [DE 41] at 5.

However, the foregoing contention that Defendant makes in her reply is undermined by Plaintiff's express representation in its response that it "is not pursuing claims against [Defendant] in the state court proceedings supplementary so she is not required to litigate in such proceedings and relitigate here."  [DE 33] at 2.  In other words, Plaintiff has represented that it will not proceed *against Defendant* in the state court proceedings supplementary notwithstanding the Notice to Appear that was issued to Defendant in those proceedings.[13]  Thus, from a pragmatic standpoint, this representation lessens any piecemeal-litigation concerns (and would potentially arm Defendant with judicial estoppel arguments if Plaintiff were to change course and proceed *against Defendant* in the state court).  At the very least, Defendant has failed to show "that piecemeal litigation poses any greater waste or danger here than it does in the vast majority federal cases with concurrent state counterparts."  *Ambrosia Coal*, 368 F.3d at 1333.  Accordingly, to the extent this factor favors abstention at all in this case, it only does so to a small degree.

**(5) Whether Federal Law Applies Rule of Decision:** State law applies to the claims in this case.  However, "this factor favors abstention only where the applicable state law is

---

[13]  Although Plaintiff also filed a supplemental complaint in the state court proceedings supplementary, the supplemental complaint does not include claims against Defendant; it was only filed against the other two impleaded parties, who are not parties to this case.  At the same time, the supplemental complaint does raise claims against those parties that have substantial factual overlap with the claims against Defendant in this case, which does present piecemeal litigation concerns.  Yet, Defendant fails to argue that the presence of these additional parties is the source of her piecemeal litigation concerns.  Rather, Defendant's argument on this factor revolves solely on the fact that Defendant is a party in both proceedings.

particularly complex or best left for state courts to resolve." *Jackson-Platts*, 727 F.3d at 1143. Notably, "[n]othing suggests that Florida's UFTA is the kind of complex law that raises thorny and difficult state law questions; federal courts are regularly called upon to resolve state law claims of fraud, including claims arising under Florida's UFTA." *Id.* Therefore, this factor does not favor abstention.

(6) **Adequate Protection of Parties' Rights:** In the Motion to Abstain, Defendant argues that this factor supports abstention because Plaintiff can obtain identical relief in the state court proceeding. However, Defendant fails to show (or argue) that this Court will not adequately protect the parties' rights. Ultimately, neither party points to any reason to doubt that this forum or the state court forum will adequately protect the rights of the parties. Therefore, I agree with Plaintiff that this factor is neutral. *See id.* ("[T]he fact that *both* forums are adequate to protect the parties' rights merely renders this factor neutral." (citation omitted)).

(7) **Vexatious or Reactive:** In the Motion to Abstain, Defendant argues that because Plaintiff "is introducing the same facts and core issues as it did in the state court case," plaintiff is necessarily "attempting to multiply the proceedings against [Defendant] in order to require her to incur substantial attorney's fees and costs to extort some type of settlement from her." [DE 27] at 8. For this reason, Defendant asserts that Plaintiff is effectively forum shopping.

I do not find any basis to conclude that Plaintiff is impermissibly forum shopping or that this case is reactive in nature. A case may be deemed reactive if it is one pursued in reaction to an unfavorable ruling in a different court. *See Freeman v. Wells Fargo Bank, N.A.*, No. 19-CV-80670, 2019 WL 13147405, at *5 (S.D. Fla. Dec. 12, 2019) ("A case may be considered reactive 'if plaintiff went to federal court solely in reaction to its failure in the state court.'" (quoting *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 915 F.2d 7, 15 (1st Cir. 1990)) (cleaned up)); *see also*

*Baker v. Warner/Chappell Music, Inc.*, 759 F. App'x 760, 764 (11th Cir. 2018).  However, there is no indication that Plaintiff filed this action following, or in reaction to, some unfavorable ruling in the state court proceeding.  Moreover, based on Plaintiff's representation in its response that it is not going to press forward with its claims against Defendant in the state court proceeding, *see* [DE 33] at 2, this case is not vexatious either.  Therefore, I cannot conclude that this factor weighs in favor of abstention.

(**8**) **Balance of Factors:** As indicated above, five of seven factors do not favor abstention.  Of the other two factors, one is neutral, and the other (piecemeal litigation) only slightly favors abstention (if at all).  Regardless, from a pragmatic standpoint, Plaintiff's representation about not pursuing Defendant in the state court proceedings supplementary at least somewhat alleviates concerns regarding piecemeal litigation.  Thus, on balance, the relevant factors overwhelmingly weigh against abstention.   At a minimum, they plainly demonstrate that the exceptional circumstances necessary to take the "extraordinary step" of declining to exercise jurisdiction do not exist.  *See Noonan S., Inc. v. Cnty. of Volusia*, 841 F.2d 380, 383 (11th Cir. 1988).  Therefore, the Motion to Abstain should be denied.

<u>**CONCLUSION**</u>

For the reasons discussed above, I respectfully **RECOMMEND** that the Motion to Dismiss [DE 26] be **GRANTED IN PART and DENIED IN PART**, that Counts IV-VIII of the Complaint be **DISMISSED**,[14] that the Motion to Abstain [DE 27] be **DENIED**, and that the Conditional Motion [DE 34] be **DENIED AS MOOT** (given that personal jurisdiction exists).

---

[14] Plaintiff's response requests leave to amend to the extent any claims are dismissed.  However, "[w]here a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly."  *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty., Fla.*, 48 F.4th 1222, 1236 (11th Cir. 2022) (quoting *Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1277 (11th Cir. 2018)).  Additionally, Plaintiff's request for leave to amend

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Rodolfo A. Ruiz, II, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida this 13th day of September 2023.

Jared M. Strauss
United States Magistrate Judge

---

does not comply with Rule 7(b) because Plaintiff has not attached a copy of, or described the substance of, any proposed amendment.  *See Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009).  If Plaintiff wishes to seek leave to amend, it must do so by filing a proper motion for leave to amend (unless Defendant consents).