UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-60448-RAR

EOX TECHNOLOGY SOLUTIONS INC.,

    Plaintiff,

v.

LYDIE BRIGITTE GALASSO,

    Defendant.
_____/

## ORDER AFFIRMING AND ADOPTING REPORT AND RECOMMENDATION

**THIS CAUSE** comes before the Court on United States Magistrate Judge Jared M. Strauss's Report and Recommendation, [ECF No. 43] ("Report"), on Defendant's Amended Motion to Dismiss, [ECF No. 26] ("Motion"), Defendant's Motion to Stay and Abstain, [ECF No. 27] ("Motion to Abstain"), and Plaintiff's Motion for Jurisdictional Discovery, [ECF No. 34] ("Motion for Discovery"). The Report recommends granting in part and denying in part the Motion; denying the Motion to Abstain; and denying the Motion for Discovery as moot. Report at 1. Defendant timely objected to aspects of the Report, [ECF No. 45] ("Objections"), and Plaintiff responded, [ECF No. 48] ("Response"). The Court having carefully reviewed the Report, the Objections, and the record, and being otherwise fully advised, it is hereby

**ORDERED AND ADJUDGED** that the Report is **AFFIRMED** and **ADOPTED** as set forth herein.

## LEGAL STANDARD

When a magistrate judge's "disposition" has been properly objected to, district courts must review the disposition *de novo*. FED. R. CIV. P. 72(b)(3). When no party has timely objected, however, "the court need only satisfy itself that there is no clear error on the face of the record in

order to accept the recommendation." FED. R. CIV. P. 72 advisory committee's note to 1983 addition (citation omitted). Although Rule 72 itself is silent on the standard of review, the Supreme Court has acknowledged Congress's intent was to only require a *de novo* review where objections have been properly filed, not when neither party objects. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate[] [judge]'s factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings." (emphasis in original; alterations added)). In any event, the "[f]ailure to object to the magistrate [judge]'s factual findings after notice precludes a later attack on these findings." *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988) (citing *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. 1982)).

## ANALYSIS

### I. Personal Jurisdiction

The Report concludes that Plaintiff has successfully established jurisdiction under one of the categories for specific jurisdiction enumerated by Florida's long-arm statute, specifically section 48.193(1)(a)1 of the Florida Statutes. Report at 7. Defendant contends that Magistrate Judge Strauss failed to properly engage in the burden shifting framework in reaching this conclusion, arguing that Magistrate Judge Strauss overlooked the affidavit Defendant submitted that—she alleges—shows that she does not have minimum contacts with Florida. Objs. at 2–3.

However, the Report did not fail to account for such evidence; rather, Magistrate Judge Strauss properly concluded that Defendant's affidavit was not sufficient to refute the allegations in the Complaint—eliminating the need to consider and weigh Plaintiff's additional evidence. Report at 9–10 (outlining the factual allegations in the Complaint that are not expressly refuted by non-conclusory statements in Defendant's affidavit). Specifically, Defendant maintains the Report did not consider whether Plaintiff's "counter-affidavit" was deficient. Objs. at 3.

Therefore, there is no obligation for the Court to shift the burden back to Plaintiff once the Court has determined that Defendant's evidence is insufficient. *Don't Look Media LLC v. Fly Victor Ltd.*, 999 F.3d 1284, 1292 (11th Cir. 2021) ("When a defendant submits *non-conclusory affidavits* to controvert the allegations in the complaint, the burden shifts back to the plaintiff to produce evidence to support personal jurisdiction.") (emphasis added). And, as explained below, the Court agrees that Defendant's affidavit did not sufficiently refute allegations contained in the Complaint, where Defendant's evidence could not overcome that Plaintiff's fraudulent transfer claims (Counts I–III—allegations that Defendant made the decision to transfer the rental income and sales proceeds from the business for her own pecuniary benefit) are connected to business activities in Florida. Report at 9–10.

While Defendant does not reject that she is subject to specific personal jurisdiction under section 48.193(1)(a)(1)[1], she objects to the Report's consideration of her due process rights, arguing she does not have minimum contacts in Florida. Objs. at 4–5. "Even though a statute may permit a state to assert jurisdiction over a nonresident defendant, the due process clause of the United States Constitution protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Licciardello v. Lovelady*, 544 F.3d 1280, 1284 (11th Cir. 2008) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). Specific personal jurisdiction exists if the

---

[1] Florida law allows for jurisdiction over a defendant who "[o]perat[es], conduct[s], engag[es] in, or carr[ies] on a business or business venture in this state . . . ." Fla. Stat. § 48.193(1)(a)(1). "[T]o establish that a defendant is 'carrying on a business' for the purposes of the long-arm statute, the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit." *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005). Where a plaintiff alleges that a defendant "engaged in several forms of ongoing, extensive communications with Plaintiff's representatives in Florida; travelled to Florida, entered into an agreement requiring Defendant to send deliverables to Florida; and did send deliverables to Florida," courts have found such allegations "established engaging in business in Florida under Section 48.193(1)(a)(1)." *Intego Software, LLC v. Concept Development, Inc.*, 198 So. 2d 3d 887, 893 (Fla. 1st DCA 2016).

following three prongs are satisfied: (1) the plaintiff has established that his claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) the plaintiff has demonstrated that the defendant "purposefully availed" itself of the privilege of conducting activities within the forum state; and (3) the exercise of jurisdiction would not violate traditional notions of fair play and substantial justice. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (citations omitted). "The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, 'a defendant must make a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice.'" *Id.* (quoting *Diamond Crystal Brands, Inc. v. Food Movers Intern., Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010)).

In objecting to the minimum contacts requirement, Defendant focuses entirely on the Report's reference to *Kapila v. RJPT, Ltd.*, 357 So. 3d 241, 246 (Fla. 2d DCA 2023), attempting to distinguish the case because it references a choice of law agreement that Defendant did not enter into here.[2] Objs. at 5. However, the Report considered *Kapila* in its analysis of Florida's long-arm statute generally, not in its assessment of whether the application of the statute violates the Due Process Clause of the Fourteenth Amendment. Report at 8–15. Defendant has not properly objected to the extensive analysis that the Report undertook to find that each prong favored a finding of specific personal jurisdiction. And the Court agrees with the Report that (1) Plaintiff's claims arise out of or relate to at least one of Defendant's contacts with Florida—namely, the allegation that Defendant gained a pecuniary benefit from engaging in leasing activities in Florida and the sale of the property at issue, Compl. ¶ 12; and (2) the Complaint alleges that Defendant deliberately entered into lease agreements with Florida clients on behalf of Flopro, establishing

---

[2] The court in *Kapila* explained, however, that while choice of law provisions are "not dipositive" they "weigh further against any due process violation." *Kapila*, 357 So. 3d at 251.

that Defendant purposefully availed herself of the benefit of Florida law. *Id.*; *see also SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1230 (11th Cir. 2023) (finding that, to establish purposeful availment, a defendant must have contacts with the forum state that are deliberate, such as by entering a contractual relationship centered in the forum).

Finally, Defendant has failed to demonstrate that exercising personal jurisdiction would run afoul of "traditional notions of fair play and substantial justice." Defendant, instead, conflates Plaintiff's burden with that of Defendant. Mot. at 10–13. Thus, this objection is unavailing. *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 810 (11th Cir. 2010) ("[T]he plaintiff bears the burden of establishing a prima facie case of jurisdiction over the movant, non-resident defendant.") (internal citations omitted) (alteration in original); *Internet Sols. Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009) (noting the defendant must "raise, through affidavits, documents or testimony, a meritorious challenge to personal jurisdiction" and once the defendant has presented sufficient evidence, "the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents.").

## II. Rule 12(b)(6) Pleading

### A. Fraudulent Transfer Claims (Counts I–III)

Defendant advances a singular argument in support of dismissing the fraudulent transfer claims—that Federal Rule of Civil Procedure 9(b) applies and Plaintiff has failed to meet this heightened pleading standard. Mot. at 13–14; Reply to Plaintiff's Response to Defendant's Amended Motion to Dismiss, [ECF No. 40] at 5–7. But as the Report correctly notes, Defendant has failed to bear her burden of showing that the Complaint should be dismissed, notwithstanding which pleading standard should apply. *Madinya v. Portfolio Recovery Assocs., LLC*, No. 18-61138, 2018 WL 4510151, at *5 (S.D. Fla. Sept. 20, 2018) ("[T]he Court recognizes that Defendant did not raise this argument in the Motion to Dismiss, and the Court will not entertain it

by implication. On a Rule 12(b)(6) motion to dismiss, '[t]he moving party bears the burden to show that the complaint should be dismissed.'") (quoting *Sprint Sols., Inc. v. Fils-Amie*, 44 F. Supp. 3d 1224, 1228 (S.D. Fla. 2014)). The Court agrees with the Report's conclusion that Plaintiff has successfully pleaded both actual and constructive fraudulent transfer claims, even under a heightened pleading standard for the claims alleged under section 726.105(1)(a) of the Florida Statutes.

Plaintiff has pleaded that an actual fraudulent transfer occurred "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." Fla. Stat. § 726.105(1)(a). The Court considers several non-exhaustive factors, which are commonly referred to as "badges of fraud" to determine "actual intent." *See Wiand v. Lee*, 753 F.3d 1194, 1200 (11th Cir. 2014); *see also Yaralli v. Am. Reprographics Co., LLC*, 165 So. 3d 785, 788 (Fla. 4th DCA 2015) ("Because the determination of actual fraudulent intent can be difficult, courts look to certain 'badges of fraud' to determine whether the transfer was made with the intent to defraud creditors.") (quoting *Gen. Elec. Co. v. Chuly Int'l, LLC*, 118 So. 3d 325, 327 (Fla. 3d DCA 2013))).[3] Defendant argues the Complaint merely concludes that the transfers were fraudulent and recites the badges of fraud, "without any supporting facts, allegations or information." Objs. at 9. The Court disagrees. The Report identifies six badges of fraud in the Complaint and correctly concludes that these are

---

[3] The "badges of fraud" the Court considers are as follows: (a) The transfer or obligation was to an insider; (b) The debtor retained possession or control of the property transferred after the transfer; (c) The transfer or obligation was disclosed or concealed; (d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (e) The transfer was of substantially all the debtor's assets; (f) The debtor absconded; (g) The debtor removed or concealed assets; (h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (j) The transfer occurred shortly before or shortly after a substantial debt was incurred; (k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor. Fla. Stat. § 726.105(2). "While a single badge of fraud may only create a suspicious circumstance and may not constitute the requisite fraud to set aside a conveyance, several of them when considered together may afford a basis to infer fraud." *Wiand*, 753 F.3d at 1200 (quoting *Johnson v. Dowell*, 592 So. 2d 1194, 1197 (Fla. 2d DCA 1992)) (cleaned up).

sufficient to deny the Motion. Report at 18–19 (citing *United States v. S. Cap. Constr., Inc.*, 758 F. App'x 676, 681 (11th Cir. 2018) (affirming district court's finding of actual fraud where district court's determination was based on three badges of fraud and other circumstantial evidence)). The Court finds that these supporting allegations are sufficiently stated throughout the Complaint.

      Lastly, Defendant argues that the constructive fraudulent transfer claims should not stand because Plaintiff has failed to establish that an inequitable transfer of assets occurred. Objs. at 10. Along with the actual fraud theory alleged under section 726.105(1)(a), the Complaint alleges constructive fraud under sections 726.105(1), 726.105(1)(b), and 726.108 of the Florida Statutes. Compl. ¶¶ 42–51.[4] The pleading burden is reduced for constructive fraudulent transfer, which is based on the transferor's financial condition at the time of the transfer and the adequacy of consideration for the transfer. *Special Purpose Accounts Receivable Co-op. Corp. v. Prime One Capital Co., L.L.C.*, No. 06-61055, 2007 WL 2826603, at *5 (S.D. Fla. Sept. 25, 2007). And while courts are not in agreement that Rule 9(b)'s particularity requirement applies to actual fraudulent transfer claims, there is greater consensus that it does not apply to claims of constructive fraud. *Id.*; *see also Regions Bank v. NBV Loan Acquisition Member LLC*, No. 21-23578, 2022 WL 1499942, at *4 (S.D. Fla. May 12, 2022) (explaining that Rule 9(b) applies to actual fraud claims and the lessened, plausibility standard applies to constructive fraudulent transfer claims). Here, Plaintiff alleges that Defendant caused the transfers without any value in return, and Defendant

---

[4] Under section 726.105(1)(b), "a transfer made by a debtor is fraudulent as to a creditor if the debtor (1) made the transfer 'without receiving a reasonably equivalent value in exchange for the transfer or obligation,' and (2) either (A) 'was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction' or (B) 'intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.'" *In re Teltronics, Inc.*, 904 F.3d 1303, 1310 (11th Cir. 2018) (alterations adopted) (quoting Fla. Stat. § 726.105(1)(b)). Alternatively, under section 726.106(1), a transfer by a debtor is fraudulent as to the creditor if (1) "the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer," and (2) "the debtor became insolvent as a result of the transfer or obligation." Fla. Stat. § 726.106(1).

knew or reasonably should have known that it would incur debts beyond its ability to repay. *See* Compl. ¶¶ 20–25, 39. Thus, at this stage, Plaintiff states a plausible claim for constructive fraud under both Counts II and III.[5]

### B. Counts IV, V, VIII[6]

The parties have not objected to Magistrate Judge Strauss's findings that claims for injunctive relief (Count IV), claims of conspiracy (Count V)[7], and claims on improper distributions (Count VIII) should be dismissed. Report at 21–26. When no party has objected, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." FED. R. CIV. P. 72 advisory committee's note to 1983 addition (citation omitted); *see also Thomas*, 474 U.S. at 150 (1985). Because there are no objections to the Report's recommendation to dismiss claims for injunctive relief, civil conspiracy, and improper distribution, the Court did not conduct a *de novo* review of these issues and finds no clear error as to Magistrate Judge Strauss's findings.

---

[5] As an aside, Defendant's Objections raise arguments that were not advanced in Defendant's Motion. In her Objections, Defendant now asserts new arguments implying that fraudulent transfer claims are subject to dismissal because Plaintiff was put on notice that Defendant posted a bond in the state court action and yet failed to file a motion to increase bond or for injunctive relief—an argument not set forth in the Motion. Objs. at 7–8. When a party raises an argument for the first time in an objection to a Report, the Court may exercise its discretion and decline to consider the argument. *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009) ("[A] district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge."). Therefore, the Court does not consider these objections.

[6] Plaintiff does not oppose Defendant's motion for dismissal of Counts VI (conversion) and VII (civil theft) and notified the Court of its dismissal of these allegations without prejudice. *See* Notice of Voluntary Dismissal of Counts Six and Seven, [ECF No. 31]. Accordingly, Counts VI and VII are dismissed.

[7] Florida does not recognize civil conspiracy as a freestanding tort, *Banco de los Trabajadores v. Cortez Moreno*, 237 So. 3d 1127, 1136 (Fla. 3d DCA 2018). And here, the civil conspiracy count is based on the alleged fraudulent transfers—the "Bust Out Scheme"—which Florida courts have not considered to constitute tortious acts. Compl. ¶¶ 66–74; *see Beta Real Corporation, etc. v. Lawrence Graham,* 839 So. 2d 890 (Fla. 3d DCA 2003). Consequently, the Report recommends dismissing the conspiracy count and the Court discerns no clear error in this recommendation. *See* Report at 24 n.10.

### *III.  Abstention*

Defendant has requested that the Court abstain from adjudicating this matter given the existence of a parallel state proceeding. *See generally* Mot. to Stay.  No party has disputed the existence of a parallel state proceeding, but Defendant objects to the weight the Report afforded to each of the factors that courts should consider when determining whether to grant a request for abstention. Objs. at 10–14.  The Court agrees with Magistrate Judge Strauss that the "extraordinary and narrow" *Colorado River* doctrine should not apply here. *Ambrosia Coal & Const. Co. v. Pages Morales*, 368 F.3d 1320, 1331 (11th Cir. 2004) (citing *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976)).  Upon a *de novo* review of the relevant factors that Magistrate Judge Strauss considered under the *Colorado River* doctrine, the Court finds they were appropriately applied.[8]  Indeed, the "*Colorado River* abstention is permissible in fewer circumstances than are the other abstention doctrines, which themselves carve out only slender exceptions to the robust duty to exercise jurisdiction." *Id.*  Here, no such extraordinary circumstances exist to warrant excusing this Court from its unflagging obligation to exercise jurisdiction over a case properly before it. *See 31 Foster Children v. Bush*, 329 F.3d 1255, 1274 (11th Cir. 2003).

## **CONCLUSION**

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that the Report, [ECF No. 43], is **AFFIRMED AND ADOPTED**.  Accordingly, Defendant's Motion to Dismiss, [ECF No. 26], is **GRANTED IN PART and DENIED IN PART**.  Counts IV, V, and VIII of the

---

[8] No single factor of the six that the court considers in determining whether to abstain is dispositive, *Gold-Fogel v. Fogel*, 16 F.4th 790, 799-800 (11th Cir. 2021), and "the factors must be considered flexibly and pragmatically." *Ambrosia Coal*, 368 F.3d at 1332.  This balance, however, should be "heavily weighted" in favor of exercising jurisdiction. *Gold-Fogel*, 16 F.4th at 800.

Complaint are **DISMISSED**.[9]  The Motion to Stay and Abstain, [ECF No. 27], is **DENIED** and the Conditional Motion for Jurisdictional Discovery, [ECF No. 34], is **DENIED AS MOOT**, as the Court has concluded that personal jurisdiction exists.

**DONE AND ORDERED** in Miami, Florida, this 22nd day of November, 2023.

_____
**RODOLFO A. RUIZ II
UNITED STATES DISTRICT JUDGE**

---

[9] Plaintiff's Response requests leave to amend to the extent any claims are dismissed. Resp. at 9. However, "[w]here a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly." *Chabad Chayil, Inc. v. Sch. Bd. of Miami Dade Cnty., Fla.*, 48 F.4th 1222, 1236 (11th Cir. 2022) (quoting *Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1277 (11th Cir. 2018)).  Additionally, Plaintiff's request for leave to amend does not comply with Rule 7(b) because Plaintiff has not attached a copy of, or described the substance of, any proposed amendment. *See Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009).