UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-60448-BECERRA/STRAUSS

**EOX TECHNOLOGY SOLUTIONS,**

    Plaintiff,

v.

**LYDIE BRIDGET GALASSO,**

    Defendant.

_____/

## ORDER ON MOTION TO COMPEL

THIS MATTER came before the Court for a hearing on April 19, 2024, upon Plaintiff's Motion to Compel Production of Purportedly Privileged Documents or, in the Alternative, to Require Submission of Documents to the Court for *In Camera* Review ("Motion") [DE 114]. I have reviewed the Motion, the amended response [DE 131] and reply [DE 137] thereto, and all other pertinent portions of the record. For the reasons stated on the record at the April 19, 2024 hearing, and for the reasons discussed herein, it is **ORDERED and ADJUDGED** that the Motion [DE 114] is **GRANTED IN PART and DENIED IN PART**, as set forth herein.

## BACKGROUND

Flopro, LLC ("Flopro") is a Florida limited liability company that was administratively dissolved in September 2022. Defendant inherited a 100% ownership interest in Flopro over a decade ago and has been the sole member of Flopro since inheriting that interest.

In April 2017, Flopro sued Plaintiff in state court, and in September 2017, Plaintiff filed a counterclaim against Flopro in that lawsuit. In August 2021, a jury returned a verdict in favor of Plaintiff and against Flopro in the state court lawsuit, and in January 2022, the state court entered

a Final Judgment in accordance with the jury's verdict. That judgment, which awarded Plaintiff the principal amount of $149,938.33 (plus interest), has been satisfied.

Following the entry of the Final Judgment – also in January 2022 – Plaintiff filed a motion seeking an award of attorneys' fees and costs against Flopro in connection with the state court action. In September or October 2022, the state court found that Flopro was entitled to an award of reasonable attorneys' fees and costs. On November 30, 2022, the state court issued a Supplemental Final Judgment, awarding Plaintiff attorneys' fees in the amount of $370,204.42 and costs in the amount of $28,598.51. On appeal, the state appellate court slightly reduced the amount of costs that the trial court awarded, but the appellate court otherwise affirmed the award of fees and costs. The appellate court, which issued its mandate in January 2024, directed the trial court to enter an amended judgment removing the limited costs that were improperly awarded. The state trial court has not yet entered the amended judgment.

In the meantime, between the entry of the Final Judgment and the Supplemental Final Judgment, Flopro sold real property that it owned in Florida (in or around March 2022),[1] generating $1,610,467.44 in net sales proceeds. [DE 114-2]. Those proceeds, which were due to Flopro as the seller, were transferred directly to Defendant's personal bank account in April 2022. *See* [DE 127-1]. Then, in August 2022, all remaining funds in Flopro's bank accounts ($166,905.76) were transferred to Defendant's personal bank account. Following that transfer, Defendant transferred $1,800,000 – from her account that received the foregoing transfers – to bank accounts that she maintains in another country.

---

[1] The real property Flopro sold was the last of the real property that Flopro owned. Flopro had previously sold other real property that it owned (on approximately 7 occasions) and had transferred proceeds from those sales to Defendant, its sole member.

2

In this action, Plaintiff brings fraudulent transfer claims against Defendant to attempt to avoid and recover the April 2022 and August 2022 transfers of Flopro's funds to Defendant. Plaintiff seeks to do so in order to satisfy the amount due to Plaintiff in connection with the Supplemental Final Judgment against Flopro.[2]

## DISCUSSION

The Motion seeks to compel the production of emails that Defendant has refused to produce on grounds of privilege. In the Motion, Plaintiff contends that the Court should compel production of the emails at issue for three separate reasons, which are discussed herein (and which were discussed in further detail on the record at the April 19, 2024 hearing).

First, Defendant contends that "Flopro is a dissolved/defunct entity that no longer has any privileges to assert and Defendant may not assert its privileges as a shield to protect her own self-interests in this action." [DE 114] at 6. Defendant responds that while Flopro is dissolved, it should still be able to raise privilege because it has not completed winding up its activities and affairs. In this regard, Florida Statutes provide that "[a] dissolved limited liability company shall wind up its activities and affairs and . . . the company continues after dissolution only for the purpose of winding up." § 605.0709(1), Fla. Stat. Winding up may include, *inter alia*, "[p]rosecut[ing] and defend[ing] actions and proceedings, whether civil, criminal, or administrative." § 605.0709(2)(b), Fla. Stat. As discussed at the hearing, although a close call, I find that Flopro should still be able to assert its privileges at this time. Although Flopro has been dissolved and without assets since September 2022, Plaintiff and Flopro have continued to litigate

---

[2] Although the state court has not yet entered an amended final judgment in accordance with the appellate court's mandate, the appellate court's decision makes clear that Plaintiff is entitled to an amended judgment in excess of $397,000 (the appellate court determined that $1,055.47 in costs should be excluded from the $398,802.93 Supplemental Final Judgment).

3

with one another. For instance, as mentioned above, state court appellate proceedings between Plaintiff and Flopro only recently concluded (in late January 2024). Additionally, Plaintiff and Flopro have filed cross-motions for sanctions against one another in state court, which remain pending. Although Plaintiff stated at the April 19, 2024 hearing that it would withdraw its motion for sanctions, the fact remains that there are still at least some limited ongoing proceedings between Plaintiff and Flopro (even though the bulk of the litigation pending here and in state court is between Plaintiff and other parties). Accordingly, and for the reasons discussed on the record at the April 19, 2024 hearing, the Motion is denied with respect to the privilege issue raised in Part B.2 of the Motion.

Second, Plaintiff contends that "[b]y asserting good faith and lack of intent to hinder, delay, or defraud creditors as affirmative defenses to Plaintiff's claims, Defendant waived the attorney-client and work-product privileges related to the subject transfers." [DE 114] at 9.[3] Specifically, Plaintiff is referring to Defendant's second and tenth affirmative defenses. *See* [DE 138] at 6, 8. For the reasons discussed on the record at the April 19, 2024 hearing (including both at the beginning of the hearing and at the conclusion of the hearing), the Motion is denied as to this issue.

Third, Plaintiff contends that the crime-fraud exception to privilege applies here. Although the attorney-client privilege attaches to all "communications made in confidence by a client to an attorney for the purposes of securing legal advice or assistance," it "does not protect communications made in furtherance of a crime or fraud." *In re Grand Jury Subpoena*, 2 F.4th 1339, 1345 (11th Cir. 2021) (citations omitted). Courts have utilized the following two-part test to determine whether the crime-fraud exception applies: (1) "there must be a prima facie showing that the client was engaged in criminal or fraudulent conduct when he sought the advice of counsel,

---

[3] At the April 19, 2024 hearing, I described this issue as the third issue.

4

that he was planning such conduct when he sought the advice of counsel, or that he committed a crime or fraud subsequent to receiving the benefit of counsel's advice"; and (2) "there must be a showing that the attorney's assistance was obtained in furtherance of the criminal or fraudulent activity or was closely related to it." *Id.* (quoting *In re Grand Jury Investigation (Schroeder)*, 842 F.2d 1223, 1226 (11th Cir. 1987)). Once the moving party makes these showings, "the burden of persuasion shifts to the party invoking the privilege to provide a reasonable explanation of the conduct or communication to rebut the prima facie showing." *Platypus Wear, Inc. v. Clarke Modet & Co.*, No. 06-20976-CIV, 2008 WL 11402009, at *2 (S.D. Fla. June 6, 2008) (citing *Am. Tobacco Co. v. State*, 697 So. 2d 1249, 1256 (Fla. 4th DCA 1997)); *see also BNP Paribas v. Wynne*, 967 So. 2d 1065, 1067 (Fla. 4th DCA 2007) ("The burden then shifts to the party asserting the attorney-client privilege to show, by a preponderance of the evidence, that there is a reasonable explanation for the conduct or communication.").

The first crime-fraud prong may be satisfied by a "showing of evidence that, if believed by a trier of fact, would establish the elements of some violation that was ongoing or about to be committed." *In re Grand Jury Subpoena*, 2 F.4th at 1345. "[T]his prima facie showing must only 'have some foundation in fact'" – though mere allegations are not sufficient. *Id.* The Eleventh Circuit has characterized the requisite showing as a "low hurdle." *Id.* The first "prong is often understood to require 'probable cause' to suspect the perpetration or attempted perpetration of a crime or fraud." *United States v. Stein*, No. 21-20321-CR-Altonaga, 2023 WL 2585033, at *3 (S.D. Fla. Mar. 21, 2023) (quoting *Drummond, Inc. v. Collingsworth*, No. 2:11-CV-3695-RDP, 2015 WL 13768169, at *3 (N.D. Ala. Dec. 7, 2015)).

As discussed at the April 19, 2024 hearing, the prima facie showing under the first prong may be made – in the context of this fraudulent transfer case – by providing probable cause to

suspect that the transfers at issue were made with the intent to hinder, delay, or defraud a creditor of Flopro. That determination may be made by examining the following badges of fraud (11 factors) under section 726.105 of the Florida Statutes:

> (a)   The transfer or obligation was to an insider.
> (b)   The debtor retained possession or control of the property transferred after the transfer.
> (c)   The transfer or obligation was disclosed or concealed.
> (d)   Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
> (e)   The transfer was of substantially all the debtor's assets.
> (f)   The debtor absconded.
> (g)   The debtor removed or concealed assets.
> (h)   The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.
> (i)   The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.
> (j)   The transfer occurred shortly before or shortly after a substantial debt was incurred.
> (k)   The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

§ 726.105(2), Fla. Stat. As made clear at the hearing, it is undisputed in this case that at least 6 of 11 factors are present here (and there is no dispute that the badge in subsection (k) is not present here). Specifically, the parties do not dispute the presence of the badges of fraud listed in subsections (a), (d), (e), (h), (i), (j). The presence of six badges of fraud alone is likely sufficient to establish a prima facie case. While the parties do dispute whether the badges listed in subsections (b), (c), (f), and (g) are present, there is at least a reasonable argument that some or all of these badges exist here.[4] Thus, it is undisputed that 6 badges of fraud are present and at least

---

[4] The disputes on at least subsections (b), (f), and (g) largely come down to whether Defendant's actions of retaining the transferred funds and further transferring them to accounts offshore count as the "debtor" (i.e., Flopro) retaining, absconding, and removing the property. As discussed at the hearing, each party at times conflates Defendant with Flopro depending on the issue they are arguing, and drawing the line in this situation (where Defendant was Flopro's sole member) can be difficult.

arguable that up to 10 may be present. Therefore, Plaintiff has made a prima facie showing that Flopro made the transfers at issue in this case with the intent to hinder, delay, or defraud Plaintiff. Additionally, Defendant sought the advice of counsel both prior to and during the course of such allegedly fraudulent conduct.

The second crime-fraud exception prong "is satisfied by a showing that the communication is related to the criminal or fraudulent activity established under the first prong." *Schroeder*, 842 F.2d at 1227. "[T]he requirement that legal advice must be related to the client's criminal or fraudulent conduct should not be interpreted restrictively." *Id.* As discussed at the April 19, 2024 hearing, I conducted an in camera review of 88 pages of emails submitted by Defendant. Four of those emails – which are identified in footnote 5 below – are related to the fraudulent activity established under the first prong.

For the foregoing reasons, Plaintiff has satisfied its burden as the party seeking to invoke the application of the crime-fraud exception. Moreover, for the reasons discussed on the record at the April 19, 2024 hearing, the explanations that Defendant offered are insufficient to carry her burden of persuasion to rebut Plaintiff's prima facie showing. Specifically, Defendant's explanation that Defendant was simply operating consistently with her "ordinary course of business" by transferring Flopro's proceeds to her upon a sale of property is unconvincing in circumstances where Defendant knew that the transfer constituted the last of Flopro's assets and knew (or should have anticipated) that Plaintiff held a viable claim for attorney's fees against Flopro. Indeed, the fraudulent transfer statute appears specifically designed to disabuse debtors of the idea that they can transfer away assets as they seek to close their businesses without considering the impact on known creditors. Thus, Defendant's explanation here is insufficient to outweigh the

circumstantial evidence of intent to defraud (as illustrated by the badges of fraud). Therefore, Defendant will be required to produce the emails identified in footnote 5 below.

## CONCLUSION

For the foregoing reasons, and for the reasons discussed on the record at the April 19, 2024 hearing, it is **ORDERED and ADJUDGED** that the Motion [DE 114] is **GRANTED IN PART and DENIED IN PART**. By **May 3, 2024**, Defendant shall produce the emails discussed at the hearing to Plaintiff's counsel,[5] unless Defendant appeals this Order to the District Judge and obtains a stay pending appeal.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 19th day of April 2024.

*Jared Strauss*
Jared M. Strauss
United States Magistrate Judge

---

[5] Those emails are labeled in the top left corner as item numbers 34 (1 page), 35 (2 pages), and 37 (1 page).